Ronald HORNER

v.

ROWAN COMPANIES, INC.

Civ. No. G–93–357.

United States District Court,
S.D. Texas,
Galveston Division.

Jan. 4, 1994.

Raleigh Newman, Norman J. Thigpen, and Bernard H. McLaughlin, Lake Charles, LA, for plaintiff.

Best, Koeppel & Klotz, New Orleans, LA, for defendant.

### OPINION AND ORDER

FROESCHNER, United States Magistrate Judge.

■ Before the Court is the motion of Plaintiff, Ronald Horner, for sanctions and censure of Defendant's counsel, filed as a result of ex parte conversations between one of the Defendant's attorneys and two of the Plaintiff's treating physicians. While this Court has been unable to locate Fifth Circuit authority, it has determined there to be a split of authority concerning the propriety of ex parte conferences with a plaintiff's treating physicians. Accordingly, the burden falls upon the Court to treat this matter somewhat exhaustively and with a view toward what, in this Court's opinion, this Circuit should conclude if faced with the issue. For the reasons hereinafter set forth, this Court concludes that despite the Defendant's possession of an unrestricted medical release executed by Plaintiff, in the absence of reasonable notice to Plaintiff that the Defendant intends to conduct an ex parte conference with Plaintiff's treating physicians, such a conference is improper and, depending upon the circumstances surrounding same, sanctionable.

On November 5, 1993, this Court conducted an evidentiary hearing in regard to Plaintiff's motion to afford all parties an opportunity to be heard and to create a record from which this Court could make specific factual findings upon which to base any imposition of sanctions. *Thomas v. Capital Sec. Servs., Inc.,* 836 F.2d 866 (5th Cir.1988) *(en banc)* (Rule 11 sanctions must be supported by an adequate record); *Akin v. Q–L Inv., Inc.,* 959 F.2d 521, 534–5 (5th Cir.1992) (Rule 11 sanctions must be supported by specific factual findings to permit proper review for abuse of discretion); *Topalian v. Ehrman,* 3 F.3d 931 (5th Cir.1993) (Principles elucidated in *Thomas* apply across-the-board to all of the District Court's sanction powers including violations of discovery rules, 28 U.S.C. § 1927, and the Court's inherent power to sanction improper conduct by counsel in any proceeding before it.)

At the commencement of the hearing, the Court took judicial notice that this was a cause of action brought pursuant to the Jones Act and general maritime law for personal injuries allegedly sustained by Plaintiff. In order to prosecute Plaintiff's cause of action, the Court noted that Plaintiff's attorneys, Newman, Thigpen and McLaughlin, requested and received permission of this Court to appear *pro hac vice* conditioned, in part, upon their commitment to familiarize themselves with the Code of Ethics as promulgated by the State Bar of Texas. Further, the Court noted that in order to defend the interests of the Defendant, W. Patrick Klotz of the law firm Best, Koeppel and Klotz, likewise sought and received permission of the District Court to appear *pro hac vice* conditioned on the commitment to familiarize himself with, *inter alia,* the Code of Ethics as promulgated by the State Bar of Texas. The representations of Klotz are attributable to other members of his firm who actively participate in this litigation, including Larry Best, the primary actor involved in the factual scenario underlying the Plaintiff's motion.

In regard to the matter made the basis of Plaintiff's motion, there was little, if any, significant dispute between the parties as to the evidence. On or about September 7, 1993, Defendant's counsel, Koeppel, noticed the depositions of two of the Plaintiff's treating physicians, Charles McAdams and Peter Polatin, at the doctors's offices in Denton and Lewisville, Texas, respectively. Denton and Lewisville are cities located in the vicinity of Dallas, Texas. The depositions were to take place on September 29, 1993. Plaintiff's attorney, Thigpen, of Lake Charles, Louisiana, thereafter made arrangements to attend the depositions and purchased non-refundable airline tickets. On September 27, 1993, Thigpen's office was notified by Koeppel's office that the depositions had been canceled. The *specific* reason given to Thigpen's office for the cancellation was that none of the lawyers at Koeppel's firm could be available to travel to Texas on the scheduled date; this reason, however, was untrue. At the very time the depositions were reported to Thigpen's office to be canceled, Best was scheduled to be in Dallas on the 29th; therefore he and his two partners decided that since they possessed an unrestricted medical release

signed by the Plaintiff, Best would, during his already planned trip to Dallas, simply pay a visit to each doctor's office and, in lieu of the depositions, conduct ex parte conferences with the treating physicians. Accordingly, while Thigpen and the court reporter were informed the depositions had been canceled, the doctors were not.

Motivated by suspicion or intuition, Darlene Fonteneau, a secretary at Thigpen's office, called the doctors' offices on the 27th to confirm the cancellation of the depositions. When informed that Koeppel's office had not notified the doctors of the cancellations, she placed a call to Koeppel's office and was assured that the failure to notify the doctors had been simply an oversight and that the depositions were, indeed, canceled.

On September 29, in furtherance of the scheme, Best, without any notice to Thigpen's office, called upon each of the doctors, told them for the first time that the depositions had been canceled, and engaged in private ex parte conversations with each doctor concerning Plaintiff's medical condition. Unfortunately for defense counsel, the intuitive Ms. Fonteneau called the doctors' offices on September 30 and learned of Best's clandestine meetings. The instant motion soon followed.

Defense counsel put substantial reliance upon the medical release form signed by Plaintiff as a justification for the ex parte conversation; they argue that the broad language of the release is controlling and permits them to forego the discovery devices recognized by the Federal Rules of Civil Procedure and to ignore the scope and applicability of the law of physician/patient privilege. This argument would provide a swift and simple resolution to Plaintiff's motion, but this Court suspects that even defense counsel, though cunningly hopeful, are not convinced that this matter must end here. This Court admits the language in the release is broad and that Plaintiff's counsel could have drafted a more restrictive document,[1] but on these facts Best's position is disingenuous. The reason given for the cancellation of the depositions was a lie [2] and it is obvious to this Court that Best feared that disclosure of the plan to engage in the informal ex parte discussions with the doctors would have been met with immediate and strenuous objection; otherwise, he would have simply told the truth. Best's testimony that he didn't "know whether they would have objected or not" (tr. 54) is, quite frankly, not credible.[3] The inescapable conclusion is that defense counsel wanted to assure that Plaintiff's counsel would not be present at Best's meetings with the doctors.

■ Unless this Court's research is deficient, the propriety of ex party interviews of a plaintiff's treating physician by defense counsel is an unanswered question in this Circuit. The question, however, is not a new one, and of the numerous courts that have dealt with it there is no consensus. Accordingly, in its quest to establish the appropriate rule, while this Court lacks Circuit authority, it is not without the guidance and counsel of other jurists.

While the Federal Rules of Civil Procedure provide certain specific discovery devices, it is clear that no federal procedural rule explicitly permits or prohibits ex parte interviews between defendants and plaintiff's treating physicians. *Filz v. Mayo Found.*, 136 F.R.D. 165, 173 (D.Minn.1991). Accordingly, federal courts that have dealt directly with this issue seem to be split. In *Felder v. Wyman*, 139 F.R.D. 85 (D.S.C.1991), a South Carolina District Court held that the absence of preclusive provisions in the Federal Rules of Civil Procedure makes ex parte conferences between defendants and plaintiff's nonparty treating physicians permissible. At least two District Courts in Kansas have held such conferences to be allowed. In *Clark v. Homrighous*, 136 F.R.D. 186 (D.Kan.1991), the Court upheld the decision of the Magistrate Judge granting defendant's motion to allow informal private interviews of plaintiff's treating physician not designated as an ex-

---

1. See Transcript, pp. 60–62.

2. Best testified that the depositions were canceled because defense counsel's "purposes could be accomplished with a direct (ex parte) interview." (tr. 47)

3. It is noteworthy that Best testified that he had been offended by and objected to similar conduct committed by lawyers in his past experience. (tr. 55)

pert as long as the defendant informed the doctor of his right to decline the interview; the Magistrate Judge relied upon the failure of the Rules to preclude such conferences. In *Bryant v. Hilst,* 136 F.R.D. 487 (D.Kan. 1991), the District Court affirmed an order of the Magistrate Judge overruling plaintiff's motion for a protective order preventing the defendant from communicating ex parte with plaintiff's treating physicians without express written authorization from plaintiff. The Magistrate Judge found such an order would be improper and unfair because it would permit plaintiff's counsel unrestricted access to these crucial witnesses while denying defense counsel the same. The Court opined that both parties should have unfettered access to fact witnesses and informal discovery from these witnesses should be encouraged. Indeed, the Court found this position to be completely consistent with the provisions of Rule 1, Federal Rules of Civil Procedure, that the Rules are to be construed "to secure the just, speedy, and inexpensive determination of every action". While giving recognition to the fact that the doctors are not obligated to confer with defense counsel ex parte, the Court stated that neither party is entitled to exercise coercion to obtain a conference with a treating physician or to preclude one; the option is that of the witness. In reliance on a Kansas statute, the Court found that there is no physician/patient privilege afforded by law as to plaintiff's medical condition or communications related thereto, whether directly related to plaintiff's medical condition giving rise to the litigation or otherwise. The Court dismissed the plaintiff's constitutional claim for privacy as being without merit. In *Filz v. Mayo Found.,* supra, the Court found that *despite* a state statute to the contrary, a federal court, sitting in diversity, is not bound thereby and ex parte interviews, governed by federal procedural law, are permissible. 136 F.R.D. at 175. In *Doe v. Eli Lilly & Co., Inc.,* 99 F.R.D. 126 (D.D.C.1983), the plaintiff was ordered to execute an authorization allowing his treating physicians, at their option, to engage in informal ex parte interviews with defense counsel because, absent the existence of a privilege, which the court found to be waived by the filing of the complaint, a party cannot restrict access to witnesses. Likewise in *Sklagen v. Greater Southeast Community Hosp.,* 625 F.Supp. 991 (D.D.C.1984), the District Court held that a plaintiff could be compelled to authorize her physicians, at their discretion, to disclose information about plaintiff in informal ex parte interviews with defense counsel; the ex parte interviews, the court found, operate outside of, and are not precluded by, the Federal Rules of Civil Procedure. In *MacDonald v. United States,* 767 F.Supp. 1295 (M.D.Pa.1991), *aff'd,* 983 F.2d 1051 (3d Cir.1992), the Court denied plaintiff's motion to strike the testimony of a treating physician who had been interviewed ex parte by defense counsel finding there was no Pennsylvania policy forbidding such interviews or requiring advance notice of same to plaintiff. And in *King v. Ahrens,* 798 F.Supp. 1371 (W.D.Ark.1992), the District Court went so far as to find that the Court has no authority to prohibit ex parte communications between defense counsel and plaintiff's treating physicians.

On the other hand, many federal courts have had no trouble condemning the use of such undisclosed ex parte conferences. In *Garner v. Ford Motor Co.,* 61 F.R.D. 22 (D.Alaska 1973), the Court found defendant's private ex parte conferences with plaintiff's treating physicians to be an improper practice not contemplated by the rules. The District Court in *Weaver v. Mann,* 90 F.R.D. 443 (D.N.D.1981), found that the Federal Rules of Civil Procedure *prohibit* such conferences. In *Bohrer v. Merrill–Dow Pharmaceutical, Inc.,* 122 F.R.D. 217 (D.N.D. 1987), and in *Alston v. Greater Southeast Community Hosp.,* 107 F.R.D. 35 (D.D.C. 1985), motions to compel plaintiffs to authorize defendants to engage in ex parte interviews with plaintiff's treating physicians were denied. In *Gobuty v. Kavanagh,* 795 F.Supp. 281 (D.Minn.1992), the District Court rejected the earlier *Filz* decision, supra, found the state statute to apply and refused to permit ex parte interviews. In *Miles v. Farrell,* 549 F.Supp. 82 (N.D.Ill. 1982), the District Court held that Federal Rules do not permit ex parte interviews of plaintiff's treating physicians. And, in *Neal v. Boulder,* 142 F.R.D. 325 (D.Colo.1992), the United States Magistrate Judge, while recognizing a nation-wide split of authority, held that compelling releases and authorizations

for ex parte communications with treating physicians is beyond what is authorized by Rule 34. "The better reasoned view of courts considering this issue," the Magistrate Judge stated, "is that the Doctor-patient privilege is not completely abrogated when a plaintiff chooses to commence litigation." *Id.* at 328. This Court agrees.

■ In reviewing and evaluating the various decisions, this Court has come to the conclusion that the appropriate rule should prohibit private ex parte interviews between defense counsel and plaintiff's treating physicians unless, with advance notice thereof, plaintiff specifically and unconditionally authorizes same; this is the only way in which the physician/patient privilege can be held inviolate.

■ The physician/patient privilege is recognized by Texas Rule of Evidence 509 and is adopted for use in this forum pursuant to Federal Rule of Evidence 501. The purpose of the privilege is to enable a patient to secure complete and appropriate medical treatment by encouraging candid communication between patient and physician free from the fear of possible embarrassment and invasion of privacy engendered by an unauthorized disclosure of information. The fostering of open and honest communication within this relationship, just as within the attorney/client relationship, is deemed to outweigh society's interest in obtaining information, *Harlan v. Lewis,* 141 F.R.D. 107, 109 (E.D.Ark.1992), *aff'd,* 982 F.2d 1255 (8th Cir.), *cert. denied, Hall v. Harlan,* — U.S. ——, 114 S.Ct. 94, 126 L.Ed.2d 61 (1993), and while persons outside the legal profession might not understand all of the legal niceties surrounding the privilege there is, nonetheless, a general public understanding that physicians will not disclose patient information unless or until they are legally compelled to do so. *Id.* at 110. Quite candidly, case law and Texas Rule 509(d)(4) create an exception, or statutory waiver, of the privilege, but only as to communications or records *relevant to* the issue of a plaintiff's medical condition when litigation relative to that condition is instituted. Therefore, while there is conflicting authority, in order to preserve the integrity of the physician/patient privilege, a defendant must be limited to the formal methods of discovery enumer-

ated by the Rules of Civil Procedure, absent the plaintiff's *express* consent to counsel's ex parte contact with his treating physicians. *Crist v. Moffatt,* 326 N.C. 326, 389 S.E.2d 41 (1990).

Unacceptable problems are inherently attendant to a contrary view. When a treating physician is interviewed ex parte by defense counsel, there are no safeguards against the revelation of matters irrelevant to the lawsuit and personally damaging to the patient, and the potential for breaches in confidentiality can have a chilling effect upon the critically important underlying relationship. Such interviews also create situations which invite questionable conduct. They may disintegrate into a discussion of the adverse impact the jury award may have on the rising cost of medical insurance rates. *Manion v. NPW Medical Ctr., Inc.,* 676 F.Supp. 585 (M.D.Pa. 1987), *criticized by MacDonald v. United States,* 767 F.Supp. 1295 (M.D.Pa.1991). They may result in attempts to dissuade the doctor from testifying. *Harlan v. Lewis,* 982 F.2d 1255 (8th Cir.), *subst. opinion, in part, reh'g denied,* 1993 U.S. App. LEXIS 3403, *cert. denied, Hall v. Harlan,* — U.S. ——, 114 S.Ct. 94, 126 L.Ed.2d 61 (1993). They may result in defense counsel abusing the opportunity to interrogate the physician by privately inquiring into facts or opinions about the patient's mental and physical health or history which might neither be relevant to the law suit nor lead to the discovery of admissible evidence. Moreover, while Rule 509 removes the privilege in regard to information concerning any medical condition in issue, information not related to that condition remains privileged. The decision to waive the privilege as to unrelated matters belongs to the patient; yet, if ex parte interviews are permitted, it would be left to the physician to determine what information is subject to disclosure and what remains privileged. The doctor is not only unskilled in making that determination, any error in judgment could, in addition, expose the physician to liability arising from an improper disclosure. *Harlan,* 982 F.2d at 1264. Requiring the contact with treating physicians to occur only in the context of formal discovery relieves the physician of this responsibility, protects him from inadvertent

liability, and protects any information still privileged by assuring plaintiff's representative will be in a position to timely assert the privilege where appropriate. Formal discovery, on the record, with notice and an opportunity to other parties to be present and to participate in the proceedings, is simply the fairest and most satisfactory means of obtaining discovery from a treating physician. *Manion*, 676 F.Supp. at 589. Besides, this rule regulates only how defense counsel may obtain information from a treating physician, not the substance of what is discoverable. *Id.* at 593. In the opinion of this Court, Best's ex parte contact with Plaintiff's treating physicians was improper in that it occurred far outside the bounds of formal discovery.

■ Best's position that it was his firm's obligation to contact Plaintiff's treating physician in an ex parte manner in order to monitor Plaintiff's cause of action for maintenance and cure is offensively unpersuasive. Defense counsel could very easily have monitored this situation with full notice to Plaintiff's counsel within the bounds of formal discovery.

The evidentiary hearing did not touch on the substance of Best's interviews. Best did not admit or deny any improper conduct during these communications with the doctors, although he made it clear he did not intend to disclose the notes he had taken, claiming them to be work product. (tr. 57) Regardless, as in *Manion*, this Court prefers a general standard that ex parte interviews like the ones here are impermissible and presumptively prejudicial, rather than a rule which requires the Court, in each case, to examine, after the fact, the substance of an ex parte meeting to reach a determination of prejudice. The latter approach can never recreate the substance and atmosphere of the improper meeting. Moreover, the more improper the conduct, the less likely will be the efforts of the Court to truly determine the substance of the conversation.

If this is a question of first impression in this Circuit, this Court must fashion an appropriate remedy. Disallowing the testimony of the doctors is no solution here because their testimony may be critical to the Plaintiff's case and the Plaintiff is guilty of no wrongdoing. The only sensible remedy would be one that would restore the Plaintiff, as much as possible, to his status before the improper ex parte communications and thereby remove the taint of prejudice from this litigation. The only way to accomplish this end is to disqualify defense counsel with the admonition that none of the substance of the ex parte conferences be disclosed to substitute counsel. Disqualification of counsel, however, is an extreme and disfavored sanction and it seems disproportionately severe in a case that may be announcing a new rule pertaining to a previously unsettled issue subject to good faith disagreement. Indeed, even the imposition of sanctions for engaging in the ex parte interviews appears inappropriate in this case since this Court cannot say that the ex parte interviews were unauthorized in this Circuit at the time they occurred. Therefore, while this Court will find it easy to sanction future violations of the rule announced herein, it would be hard pressed to explain the basis for sanctions upon such conduct in the case at bar. Accordingly, Plaintiff's Motion for Sanctions, insofar as it seeks sanctions against defense counsel for engaging in the ex parte interviews is **DENIED**.

This Court can, however, punish dishonesty. Given the subtle nature of the law in regard to ex parte communications with treating physicians, this Court may have excused defense counsel's conduct had it occurred in some other factual setting. For example, had they never noticed the depositions and simply decided to conduct the interviews innocently, without thought to the propriety of such contact, this Court might forgive the actions. "A practice that (sanctions) mere negligence on the part of counsel is not necessary to the orderly functioning of the Court system," *Zambrano v. City of Tustin*, 885 F.2d 1473, 1480 (9th Cir.1989). However, this is not the case. Here, defense counsel purposely misled opposing counsel in order to orchestrate these, at best, questionable ex parte interviews. Regardless of the ultimate decision of the Circuit regarding the propriety of ex parte interviews of plaintiff's treating physicians, this type of deceptive and unethical activity constitutes bad faith and will never be condoned in this judicial division.

In the Order of Adoption of "Texas Lawyer's Creed—A Mandate for Professionalism", promulgated by the Supreme Court of Texas and the Texas Court of Criminal Appeals on November 7, 1989, the highest Courts of Texas commanded that "the conduct of a lawyer should be characterized at all times by honesty, candor and fairness". Moreover, Disciplinary Rule 1–102(a)(4) of the Texas Code of Professional Responsibility, which in this jurisdiction is mandatory and has the status of law, *State v. Malone,* 692 S.W.2d 888 (Tex.App.—Beaumont 1985, writ ref'd n.r.e.), requires that a lawyer not engage in conduct involving dishonesty, deceit or misrepresentation with another lawyer. Every lawyer owes a solemn duty to conduct himself so as to reflect credit on the legal profession and inspire the confidence, respect and trust of his clients and of the public and to strive to avoid not only professional impropriety but the mere appearance of impropriety. Ethical Consideration 9–6, Texas Code of Professional Responsibility. Because of a lawyer's special position in society, even minor wrongdoing tends to lessen the already weakened public confidence in the legal profession. *Bray v. Squires,* 702 S.W.2d 266 (Tex.App.—Houston [1st Dist.] 1985, no writ).

■ A federal District Court can, in the proper case, invoke its inherent power and assess attorneys' fees and appropriate expenses as a sanction for the bad faith conduct a lawyer displays toward his adversary. *Chambers v. NASCO, Inc.,* 501 U.S. 32, ——, 111 S.Ct. 2123, 2137, 115 L.Ed.2d 27, 51 (1991). The imposition of such sanctions does not depend on who wins the lawsuit, but on how the parties conduct themselves during the litigation. *Id.* at ——, 111 S.Ct. at 2137, 115 L.Ed.2d at 50. Therefore, even though the underlying complaint of Plaintiff will not merit the imposition of sanctions, the inexcusable bad faith conduct of defense counsel, brought to light by virtue of the Plaintiff's motion, will support an award of attorney fees and relevant expenses incurred by Plaintiff attendant to the instant motion. Accordingly, Plaintiff is hereby **ORDERED** to submit to this Court, within ten days of receipt of a copy of this order, complete sworn documentation of the appropriate costs, expenses, and fees. Defendant shall have ten days from receipt of a copy of the Plaintiff's application for costs, expenses, and fees, to file a response.

It is further **ORDERED** that this matter shall not be considered final for purposes of appeal to the District Court until such time as this Court determines the sanctions it will impose.