**Nancy Miles PERKINS, Individually and as Next Friend of Milocy Miles, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 2:94cv26.**

United States District Court,
E.D. Texas,
Marshall Division.

Jan. 11, 1995.

Rex Alton Nichols, Sr., Rex A. Nichols, Jr., Nichols & Nichols P.C., Longview, TX, for Nancy Miles Perkins.

Vic Houston Henry, Storey Armstrong Steger & Martin, Dallas, TX, Steven MacArthur Mason, Asst. U.S. Atty., U.S. Attorney's Office, Tyler, TX, for George Lester Black and U.S.

## ORDER

STEGER, District Judge.

On this day came on to be considered Defendant's Motion to Revise Docket Control Order (docket number 33) and Plaintiff's Motion to Quash Depositions. After careful consideration, the Court is of the opinion that the following order should issue.

The question is whether in a personal injury suit a defense lawyer may contact *ex parte* a plaintiff's non-party treating physician without the plaintiff's authorization. The answer is no.

Ms. Perkins sued the United States under the Federal Tort Claims Act for injuries she and her daughter, Milocy Miles, suffered when their car was struck by one driven by a federal employee. Ms. Perkins was treated by Dr. Rod Martinez, a radiologist, and Dr. Ronald Donaldson, a neurosurgeon.

After filing suit, Ms. Perkins executed a medical records authorization form. Permitting access only to records, the form stated from Ms. Perkins to the physicians: "You are not authorized to engage in any verbal communications except with your patient and your patient's attorney." Subsequently, the parties appear to have obtained Ms. Perkins' medical records in the usual manner.

When the government's lawyer initially requested an authorization form, he supplied one of his own. Although not used by Ms. Perkins, it is worth pointing out that the government's form contained similar language barring verbal communications.

During discovery, the attorney for the government wrote the physicians requesting written opinions. The government discussed Ms. Perkins' condition in detail and asked the physicians to address specific questions. The government lawyer did not send copies of the letters to Ms. Perkins' lawyers. There is some indication the government lawyer spoke with the physicians in person or by phone. The physicians provided reports. The government then designated the doctors as experts for the defense, alarming the plaintiff who only then learned of the contact with her physicians.

The government now wants to depose the physicians. Ms. Perkins objects, claiming that her relationships with the physicians were privileged and the defendant's ex parte contacts violated the rules of professional conduct and state law.

■ The Fifth Circuit has never addressed whether a defense lawyer may contact a personal injury plaintiff's non-party treating physicians *ex parte* without authorization. Under Federal Rule of Evidence 501, federal common law determines the existence of a privilege when the privilege is not a primary element of a party's claim or defense. When state law governs an element of a claim or defense, however, state law governs privileges associated with element.

■ At issue are Ms. Perkins' injuries, an element of her claim under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* Under the Claims Act, state law dictates federal liability. 28 U.S.C. § 2674; *Transco Leasing Corp. v. United States,* 896 F.2d 1435, 1450 (5th Cir.1990); Annotation, *Extent to Which State Law is Applicable in Actions under Federal Tort Claims Act,* 7 L.Ed.2d 994. Consequently, state law dictates the existence of any privilege. *See Felder v. Wyman,* 139 F.R.D. 85, 87 n. 1 (D.S.C.1991).

■ In passing, there is no physician-patient privilege under federal statutes, rules or common law. *Gilbreath v. Guadalupe Hosp. Foundation, Inc.,* 5 F.3d 785, 791 (5th Cir.1993); *United States v. Moore,* 970 F.2d 48, 50 (5th Cir.1992); *Horner v. Rowan Companies, Inc.,* 153 F.R.D. 597, 599 (S.D.Tex. 1994). For this reason, some courts have held federal common law to permit *ex parte* contact with treating physicians. *See, e.g., Filz v. Mayo Found,* 136 F.R.D. 165, 175 (D.Minn.1991); *Sipes v. United States,* 111 F.R.D. 59 (S.D.Cal.1986).

■ Texas recognizes a physician-patient privilege under Rule of Civil Evidence 509(b)(1). *McGowan v. O'Neill,* 750 S.W.2d 884, 886 (Tex.App.—Houston [14th Dist.] 1988, no writ). Without question, Ms. Perkins' relationships with Drs. Martinez and Donaldson are protected by this rule. Conceding this, the government argues that Ms.

Perkins waived her physician-patient privilege by filing suit.

Ms. Perkins has not waived her privilege. Texas Rule of Civil Evidence 509(d) carves several exceptions to the physician-patient privilege. The fourth exception lifts the patient's privilege when relying on her condition as part of her claim. Obviously a plaintiff always relies on her condition in a personal injury suit in which injury is an element.

■ Consequently there is no question that the opinions of Ms. Perkins' treating physicians are discoverable. Had Ms. Perkins refused permission to depose the physicians, the defendant would have been entitled to compel authorization. But the problem is not *whether* the physicians' opinions are discoverable, the issue is the *manner* in which those opinions can be obtained. Here the defense obtained the tactical advantage of first impression by asking its questions unencumbered by Ms. Perkins' lawyer. Ms. Perkins does not contest disclosure but simply asks a level playing field—that she be present during any interviews to ask questions and challenge those of her opponent.

Although Rule 509(d) removes the personal injury plaintiff's privilege, Texas courts have never allowed unchecked access to a plaintiff's medical history. In *Mutter v. Wood,* 744 S.W.2d 600 (Tex.1988), for instance, the Texas Supreme Court prohibited orders compelling plaintiffs to sign blanket medical authorizations, requiring instead that each be narrowly tailored to relevant medical history. *See also Travelers Ins. Co. v. Woodard,* 461 S.W.2d 493, 496 (Tex.Civ.App.—Tyler 1970, writ ref'd n.r.e.) ("[W]e do not believe there is anything in the rules requiring a party to grant his adversary the right of access to the files of his doctors and other witnesses, together with the right to interrogate them outside his presence and hearing.").

Similarly, Texas holds that an authorization order is overly broad if lacking means for the plaintiff to safeguard privileged non-relevant matters. *McGowan,* 750 S.W.2d at 886. If the defense privately contacts a treating physician, it is impossible for a plaintiff to safeguard such matters.

In response, the government cites *Hogue v. Kroger Store,* 875 S.W.2d 477, 480–81 (Tex. App.—Houston [1st Dist.] 1994, no writ) and *R.K. v. Ramirez,* 887 S.W.2d 836 (Tex.1994). *Ramirez* involved access to the defendant's physician, not the plaintiff's. Moreover, concern was not *ex parte* contact, but rather under what circumstances the physician could be subject to ordinary discovery.

*Hogue* however is on point. *Hogue* condoned a treating physician meeting with defense counsel without the plaintiff's authorization. *Hogue,* 875 S.W.2d at 481. With respect, this Court rejects *Hogue.* While superficially acknowledging that defense was not entitled to privileged matters *not* relevant to the suit, *Hogue* set no limits on defense communications. *Hogue* appears to extend unwittingly carte blanche to defense lawyers, deciding themselves what is relevant and what is not. Moreover, *Hogue* qualified its ruling, noting that the physician there met with his patient only once, leaving no indication how much contact triggers a privilege worth protecting. The case appears to conflict with *Mutter* and *McGowan.* Without approval by the Texas Supreme Court of such a hazardous leap, the Court will not follow *Hogue.*

There are policy reasons for preventing unauthorized contact with a treating physician. First and foremost, the patient may have disclosed to her physician extremely personal information deserving sensitive treatment. It is not for the defense lawyer to decide what is and is not personal. Second, the defense lawyer may influence the physician's conclusions. Moreover, restricting the manner of contact limits the opportunity for arm-twisting or intimidation. *See, e.g., L'Orange v. Medical Protective Co.,* 394 F.2d 57 (6th Cir.1968) (expert threatened with cancellation of professional liability insurance); *Agnew v. Parks,* 172 Cal.App.2d 756, 343 P.2d 118 (1959) (testifying physician allegedly threatened with expulsion from county medical association and cancellation of liability insurance).

Further, privately contacting a physician may expose the physician to civil liability. The Texas Medical Practice Act creates civil remedies against a physician for unautho-

rized disclosure. *See* Tex.Rev.Civ. Stat.Ann. art. 4495b, § 5.08(*l*) (Vernon Supp.1994). Moreover, the physician may violate his oath of confidentiality, exposing him to professional sanctions. The lawyers and physicians avoid all these problems by simply noticing the physician for deposition and allowing both sides to participate.

Some courts have interpreted state law to permit *ex parte* interview of treating physicians. *See, e.g., Felder,* 139 F.R.D. at 91; *Clark v. Homrighous,* 136 F.R.D. 186 (D.Kan.1991); *Sklagen v. Greater Southeast Community Hosp.,* 625 F.Supp. 991 (D.D.C. 1984); *see Horner,* 153 F.R.D. at 600 (for additional citations). Most states on the other hand, hold that a defense attorney who contacts a plaintiff's treating physician without authorization violates state law, professional ethics, or the physician-patient privilege of confidentiality. *See, e.g., Harlan v. Lewis,* 982 F.2d 1255 (8th Cir.) (Arkansas), *cert. denied,* 114 S.Ct. 94, 126 L.Ed.2d 61 (1993); *Horner,* 153 F.R.D. at 602 (Texas); *Manion v. N.P.W. Medical Ctr.,* 676 F.Supp. 585 (M.D.Pa.1987); *Alston v. Greater S.E. Community Hosp.,* 107 F.R.D. 35 (D.D.C. 1985); *Weaver v. Mann,* 90 F.R.D. 443 (D.N.D.1981); *Garner v. Ford Motor Co.,* 61 F.R.D. 22 (D.Alaska 1973); *Duquette v. Superior Court,* 161 Ariz. 269, 778 P.2d 634 (App.1989); *Torres v. Superior Court,* 221 Cal.App.3d 181, 270 Cal.Rptr. 401, 405 (Cal. App.1990); *Fields v. McNamara,* 189 Colo. 284, 540 P.2d 327 (1975); *Pourchot v. Commonwealth Edison Co.,* 224 Ill.App.3d 634, 167 Ill.Dec. 320, 321, 587 N.E.2d 589, 591 (1992); *Roosevelt Hotel Ltd. Partnership v. Sweeny,* 394 N.W.2d 353 (Iowa 1986); *Schwartz v. Goldstein,* 400 Mass. 152, 508 N.E.2d 97 (Mass.1987); *Jaap v. District Court,* 191 Mont. 319, 623 P.2d 1389 (1981); *Woytus v. Ryan,* 776 S.W.2d 389 (Mo.1989); *In re New York County DES Litigation,* 182 A.D.2d 445, 581 N.Y.S.2d 353 (1992); *Crist v. Moffatt,* 389 S.E.2d 41 (N.C.1990); *Johnson v. District Ct. of Okla. County,* 738 P.2d 151 (Okla.1987); *Loudon v. Mhyre,* 110 Wash.2d 675, 756 P.2d 138 (1988); *Zintek v. Perchik,* 163 Wis.2d 439, 471 N.W.2d 522 (App.1991).

For these reasons, the Court holds that in a personal injury suit a defense lawyer may

not contact *ex parte* a plaintiff's non-party treating physician without the plaintiff's authorization. Today's ruling applies only to contacts with *non-party* treating physicians with no relationship to the defendant. The Court does not address whether a defense lawyer may communicate with non-party treating physicians who are employees of a medical facility sued by a plaintiff. Nor does this ruling conflict with the rule that a plaintiff waives his privilege with his physician when he sues the physician for inadequate medical care. Tex.R. Civ. E. 509(d)(1).

Ms. Perkins seeks to quash the deposition notices of the two physicians and bar their testimony at trial. Generally, ex parte communication with treating physicians should be presumed prejudicial. At least in jury cases, the normal response to should be to strike the physician's testimony, even if no bad faith is involved. *See, e.g., Pourchot*, 587 N.E.2d at 591. The court may also consider attorney disqualification and sanctions. *See, e.g., Horner*, 153 F.R.D. at 602–03.

Nonetheless, the Court will not strike the physicians' testimony. First, there is no indication that bad faith is involved. *Contra id.* (deception by defense lawyer). The defense lawyer simply appears to be asserting his clients' rights in an ethical gray area. Second, the defense lawyer's letters to the physicians appear reasonably neutral and focus on relevant aspects of Ms. Perkins' condition. Third, this is a bench trial in which the Court can assess their testimony in light of the contact, assigning whatever weight is appropriate, reducing the hazards associated with allowing the testimony before a jury. Finally, damages are an important aspect of this case and the Court feels the testimony of the physicians, flawed or not, are necessary for a fair trial.

The plaintiff may question the physicians on their communications with the defense.

It is therefore,

ORDERED that Defendant's Motion to Revise Docket Control Order (docket number 33) is GRANTED; the parties may depose Drs. Donaldson and Martinez. It is further

ORDERED that Plaintiff's Motion to Quash Depositions is DENIED.