**In re Lester COLLINS, M.D.**

No. 12–06–00078–CV.

Court of Appeals of Texas, Tyler.

May 14, 2007.

Ken W. Good, Vance L. Metcalf, Don Kent, David W. Frost, Good & Anderson, P.C., Tyler, R. Brent Cooper, Diana L. Faust, Cooper & Scully, P.C., Dallas, for relator.

Bill Liebbe, Law Office of Bill Liebbe, Dallas, for real-party-in-interest.

Stephen M. Spitzer, Cowles & Thompson, P.C., Tyler, for other interested party.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and HOYLE, J.

## OPINION

BRIAN HOYLE, Justice.

In this original mandamus proceeding, Lester Collins, M.D. complains of the trial

court's order granting a motion for protective order filed by Kelly Regian and James Regian, the real parties in interest. The issue presented is whether a trial court abuses its discretion by prohibiting ex parte communications with a claimant's nonparty treating physicians when the claimant has signed a statutorily required authorization for release of health information and filed a medical malpractice suit against a treating physician.[1] This issue is one of first impression. We deny the petition for writ of mandamus.

## I. BACKGROUND

The Regians sued Collins and ETMC Neurological Institute ("ETMC") alleging that Collins and ETMC failed to timely diagnose Ms. Regian's nasopharyngeal carcinoma. Prior to filing suit, Ms. Regian gave notice of her claim as required by Texas Civil Practice and Remedies Code, section 74.051. The notice was accompanied by an authorization for release of health information in the form prescribed by Texas Civil Practice and Remedies Code, section 74.052. In the authorization, Ms. Regian listed a number of physicians and health care providers who had information relevant to the Regians's claim against Collins and ETMC. As permitted by the authorization, she also listed several physicians and health care providers to which the authorization did not apply because she contended the health care information in their possession was not relevant to the claimed damages or to her physical, mental, or emotional condition arising out of her claim.

After the suit was filed, the Regians filed a motion for protective order seeking to 1) prevent Collins and ETMC from having ex parte communications with any of Ms. Regian's nonparty treating physi-

cians, 2) require Collins and ETMC to disclose any contacts previously made with Ms. Regian's nonparty treating physicians, and 3) obtain any notes or memoranda describing the content of those contacts. The Regians alleged that these protections were necessary to safeguard information in the possession of her nonparty treating physicians that was not relevant to the lawsuit and therefore protected by the physician-patient privilege. After a hearing, the trial court granted the motion in part and signed an order prohibiting Collins and ETMC from having ex parte communications with any of Ms. Regian's nonparty treating physicians. This original proceeding followed.

## II. PREREQUISITES TO MANDAMUS

■ Mandamus will issue to correct a clear abuse of discretion when there is no adequate remedy by appeal. *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992). To determine whether the trial court clearly abused its discretion, the reviewing court must consider whether the challenged ruling or order was one compelled by the facts and circumstances or was arbitrary, unreasonable, or reached without reference to any guiding rules or principles. *In re Huag*, 175 S.W.3d 449, 451 (Tex.App.-Houston [1st Dist.] 2005, orig. proceeding). A clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Walker*, 827 S.W.2d at 840. Interpretation of a statute is a pure question of law over which the trial court has no discretion. *In re Canales*, 52 S.W.3d 698, 701 (Tex.2001). An appellate remedy is "adequate" when any benefits to mandamus review are outweighed by the detriments. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex.2004). Whether an appellate remedy

1. The respondent is the Honorable Kerry L. Russell, Judge of the 7th Judicial District Court, Smith County, Texas. The term "claimant" as used in this opinion is one who has filed suit to recover damages in a health care liability claim.

is adequate depends heavily on the circumstances presented and is better guided by general principles than by simple rules. *Id.* at 137. The relator has the burden of showing an abuse of discretion by the trial court and the inadequacy of appeal as a remedy. *In re E. Tex. Med. Ctr. Athens,* 154 S.W.3d 933, 935 (Tex.App.-Tyler 2005, orig. proceeding).

### III. Physician-Patient Privilege

■ As a general rule, confidential communications between a physician and patient are privileged and not subject to disclosure. *See* Tex.R. Evid. 509(c). The purpose of the privilege is twofold: 1) to encourage the full communication necessary for effective treatment and 2) to prevent unnecessary disclosure of highly personal information. *R.K. v. Ramirez,* 887 S.W.2d 836, 840 (Tex.1994). The physician-patient privilege is not without exceptions. *See* Tex.R. Evid. 509(e). Exceptions pertinent to this case are 1) when the proceedings are brought by the patient against a physician and the disclosure is relevant to the claims or defense of a physician; 2) when the patient submits a written consent to the release of the privileged information; and 3) when the communication or record is relevant to an issue of the physical, mental, or emotional condition of a patient where a party relies upon the condition as a part of the party's claim or defense.[2] Tex.R. Evid. 509(e)(1), (2), (4). The physician-patient privilege remains in effect for communications not relevant to the underlying suit. *Mutter v. Wood,* 744 S.W.2d 600, 601 (Tex.1988).

### IV. Ex Parte Communications— Arguments of the Parties

Collins contends that section 74.052 of the Texas Civil Practice and Remedies Code constitutes a complete waiver of the physician-patient privilege for relevant health information and "includes the verbal as well as the written." *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.052(c) (Vernon 2005). The Regians do not disagree. Collins further argues, however, that "verbal" health information may be obtained through ex parte communications with nonparty treating physicians and that the trial court had no discretion to prohibit these communications. By granting the Regians's motion for protective order, Collins asserts, the trial court abused its discretion and prevented him from using the statutorily required medical authorization in the manner contemplated by section 74.052.

The Regians contend that no Texas law or rule expressly prohibits ex parte communications or states that such communications are permissible. Relying on *Mutter,* they urge that it is within the sound discretion of the trial court, on the claimant's motion, to enter a protective order prohibiting ex parte communications with nonparty treating physicians. *See Mutter,* 744 S.W.2d at 601.

### V. Ex Parte Communications— Construction of Section 74.052

Our resolution of the issue presented here turns on the meaning of section

---

2. The Texas Occupations Code and the Texas Civil Practice and Remedies Code include similar privileges. *See* Tex. Occ.Code Ann. § 159.002(b) (Vernon 2004) (records of the identity, diagnosis, evaluation, or treatment of a patient are confidential and privileged and may not be disclosed); Tex. Health & Safety Code Ann. § 241.152 (Vernon 2001) (prohibits unauthorized disclosure of a patient's health

care information). Both codes also contain exceptions to the privilege. *See* Tex. Occ.Code Ann. §§ 159.003 (Vernon Supp.2006), 159.004 (Vernon 2004); Tex. Health & Safety Code Ann. § 241.153. However, the arguments of the parties relate only to Texas Rule of Evidence 509, and we therefore do not address these statutory provisions.

74.052. In analyzing the issue, we apply the customary principles of statutory construction.

**A. Principles of Statutory Construction.** In construing a statute, our primary objective is to determine and give effect to the legislature's intent in enacting it. *McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex.2003). In determining legislative intent, we examine the entire act, not just isolated portions of it. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex.2003). We start with the plain and common meaning of the statute's words. *McIntyre*, 109 S.W.3d at 745. Unless the statute is ambiguous, we determine the legislature's intent from the language of the statute itself. *Continental Cas. Co. v. Downs*, 81 S.W.3d 803, 805 (Tex.2002). We must presume that every word of the statute has been used for a purpose and that every word excluded from the statute has been excluded for a purpose. *Laidlaw Waste Sys., Inc. v. City of Wilmer*, 904 S.W.2d 656, 659 (Tex.1995). We should not insert words into the statute except to give effect to clear legislative intent. *Id.* We presume that the legislature enacted the statute with complete knowledge of existing law and with reference to it. *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex.1990). Regardless of whether the statute is ambiguous on its face, we may consider the statute's legislative history. TEX. GOV'T CODE ANN. § 311.023(3) (Vernon 2005). We also may consider the object sought to be obtained by the statute, the common law or former statutory provisions, including laws on the same or similar subjects, and the consequences of a particular construction. *Id.* § 311.023(4), (5).

**B. Application of the Principles.** Applying the above principles of statutory construction, we first examine section 74.052 and the medical authorization it requires to determine whether the statute addresses ex parte communications.

**1. Language of the statute.** When asserting a health care liability claim, the claimant must give written notice, at least sixty days prior to filing suit, to each physician or health care provider against whom a claim is being made. TEX. CIV. PRAC. & REM.CODE ANN. § 74.051(a) (Vernon 2005). Along with the notice, the claimant must provide each physician or health care provider an executed authorization for the release of the claimant's health information. *Id.* The form for the authorization is prescribed by section 74.052. This authorization explicitly allows and consents to the release of "verbal" information from the patient's other treating physicians that are identified in the authorization. *Id.* § 74.052(c). However, the statute is silent as to the manner in which verbal information can be obtained. Therefore, the statute neither explicitly authorizes nor explicitly prohibits ex parte communications. *See id.* § 74.052.

**2. Legislative intent.** We have reviewed the legislative history of the statute and found no mention of ex parte communications. Accordingly, we next examine the object sought to be obtained by the statute.

**3. Object of the statute.** Chapter 74 of the Texas Civil Practice and Remedies Code was enacted "to improve and modify the system by which health care liability claims are determined." Act of June 2, 2003, 78th Leg. R.S., ch. 204, § 10.11, 2003 Tex. Gen. Laws 847, 884 (current version at TEX. CIV. PRAC. & REM.CODE §§ 74.001–.507 (Vernon 2005)). To further this objective, the legislature in 2003, for the first time, required that a release of both written and "verbal" health information accompany the notice of claim. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 74.051(a), 74.052(c). The legislature did not state its

purpose for this requirement. However, we recognize that after suit is filed, ex parte communications, in some instances, may be more practical, less time consuming, and less costly than formal discovery. Therefore, based upon our reading of section 74.052 in light of the stated objective of Chapter 74, we are persuaded that requiring the release of "verbal" as well as written health information was a legislative effort to allow full, efficient, and cost effective discovery relating to the noticed claim after suit is filed. This release is not without limitation, however. In recognition of the privacy interests at stake, the legislature provided a method for protecting all health care information, including "the verbal," that is not relevant. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.052(c) (statutory authorization permits exclusion of health care information not relevant to damages being claimed or to patient's physical, mental, or emotional condition). This protection lessens the potential for protected privacy information to be disclosed because only those health care providers with relevant, nonprivileged information may be interviewed. Moreover, if a patient visited a health care provider on multiple occasions with some visits involving relevant, nonprivileged matters and some visits involving only irrelevant, privileged matters, the medical authorization form allows the patient to protect those visits involving only irrelevant, privileged matters from discussion.[3] *See id.*

**4. *Existing common law.*** Prior to the passage of section 74.052, two courts of appeals, had determined that ex parte communications with nonparty treating physicians were not improper under the current rules. In the first case, the appellants complained that the appellant wife's treating physician had met privately with defense counsel and the trial court disallowed cross examination of the physician about the propriety of the meeting. The Houston First District Court of Appeals held that the trial court reasonably concluded the appellant's treating physician did not act improperly when he met privately with opposing counsel, in part because no privileged information was disclosed during the meeting. *Hogue v. Kroger Store No. 107*, 875 S.W.2d 477, 480 (Tex.App.-Houston [1st Dist.] 1994, writ denied). Accordingly, the court held that the trial court did not abuse its discretion in disallowing cross examination of the physician about the propriety of the meeting. *Id.*

In another case, the appellants complained that opposing counsel's ex parte contact with one of the appellant husband's treating physicians was improper and should be declared impermissible. *Rios,* 58 S.W.3d at 169–71. The appellants further argued that ex parte communications "have been or should be prohibited by Texas and federal courts." *Id.* at 169. The San Antonio court disagreed and declined to formulate any such rule, stating that "[i]t is not the role of this intermediate court to craft a new rule where none currently exists." *Id.* at 171. Five months later, the San Antonio court again declined to hold ex parte communications improper under the current rules. *See Durst v. Hill Country Mem'l Hosp.*, 70 S.W.3d 233, 237–38 (Tex.App.-San Antonio 2001, no pet.) ("This court has recently

---

**3.** To exclude irrelevant health information, the claimant must list the name of each physician or health care provider to whom the authorization does not extend and the inclusive dates of examination, evaluation, or treatment to be withheld from disclosure. TEX. CIV. PRAC. & REM CODE ANN. § 74.052(c). However, exclusion of information by date does not protect irrelevant, privileged information that is acquired in the same date as relevant information.

held [in *Rios* ] that there is no specific rule prohibiting ex parte communications between a plaintiff's treating physician and defense counsel.").

The Fort Worth court, when confronted with the issue, declined to address the propriety of ex parte communications that occurred between the appellant's treating physician and defense counsel. In *James v. Kloos,* 75 S.W.3d 153 (Tex.App.-Fort Worth 2002, no pet.), the appellant argued that his treating physician should not have been allowed to testify against him at trial because his treating physician met ex parte with defense counsel. The appellant also contended that the trial court compounded the error by refusing to allow the appellant to ask the physician questions about the meeting. *Id.* at 157–58. The Fort Worth court recognized that both *Durst* and *Rios* held that "unauthorized ex parte meetings are not necessarily improper." *Id.* at 158. The court then assumed, without deciding, that the trial court's evidentiary rulings were improper, but held that the appellant had failed to show he was harmed by the rulings. *Id.* at 159.[4]

Under the rules of statutory construction, we must presume that the legislature was aware of this case law. *Acker v. Texas Water Comm'n,* 790 S.W.2d 299, 301 (Tex.1990). We also recognize that had the legislature intended to adopt a different rule, it could have done so.

**5. Consequences of a particular construction.** Finally, the consequences of a construction that permits ex parte communications do not mandate a contrary construction. It has been said that unacceptable problems, such as the lack of safeguards against the revelation of privileged information, the chilling effect potential breaches of confidentiality may have on a patient's communication with a physician, and the possibility of questionable conduct by defense counsel during the interview, are inherent when ex parte communications are permitted. It is doubtful, however, that a patient would withhold relevant information from a physician, and jeopardize her health, merely because such information may be uncovered by a defendant through ex parte communications in a subsequent lawsuit *Rios,* 58 S.W.3d at 171 n. 1. Further, a defendant that engages in questionable conduct during an ex parte interview is subject to sanctions. *See id.* Moreover, the concern about defense counsel's possible conduct is based upon the flawed premise that "questionable conduct during an ex parte interview could only occur with defense counsel." *Id.* We also note that prohibiting ex parte communications "enables the party so wielding the privilege to monitor his adversary's progress in preparing his case by his presence on each occasion such information is revealed while his own preparation is under no

4. Two federal district courts sitting in Texas have addressed the propriety of ex parte communications. In *Horner v. Rowan Cos.,* 153 F.R.D. 597 (S.D.Tex.1994), the court held that ex parte communications between defense counsel and plaintiff's treating physicians were prohibited unless plaintiff "specifically and unconditionally" consents after receiving advance notice. *Id.* at 601. In so holding, the court established a new rule of procedure to cover the question of ex parte communications in federal courts and was not interpret-

ing Texas law. In a later case, applying Texas law, the court held that ex parte communications with a plaintiff's nonparty treating physicians were prohibited unless the plaintiff authorized the communications. *Perkins v. United States,* 877 F.Supp. 330, 333 (E.D.Tex. 1995). The court expressly declined to follow *Hogue* without approval of *Hogue* by the Texas Supreme Court. *Id.* at 333. However, the Texas Supreme Court denied the application for writ of error in *Hogue.*

such scrutiny." *Doe v. Eli Lilly & Co.*, 99 F.R.D. 126, 128–29 (D.D.C.1983).

■ Based upon the foregoing analysis, we conclude that section 74.052 does not change existing law and therefore does not prohibit a defendant from communicating ex parte with a claimant's treating physicians and health care providers. However, that is not the end of the inquiry. We must also determine whether ex parte communications are permissible only under certain circumstances or in all cases involving the prosecution of a health care liability claim.

## VI. RESTRICTIONS ON EX PARTE COMMUNICATIONS

■ Collins argues that placing additional restrictions on the statutory authorization is a denial of proper discovery and an improper application of the law. If the statute expressly required that ex parte communications be allowed in all circumstances, we would agree. But as stated previously, neither the statute nor the legislative history addresses ex parte communications. Although we have concluded that section 74.052 does not prohibit ex parte communications generally, we would be inserting words into the statute without a clear legislative intent to do so if we further held that section 74.052 authorizes ex parte communications under all circumstances when a patient is prosecuting a health care claim. That exceeds our role and is something we will not do. *See Laidlaw Waste Sys., Inc.*, 904 S.W.2d at 659; *see also Rios*, 58 S.W.3d at 171.

In *Mutter*, the physician-patient privilege was waived completely as to the defendant physicians and partially as to the nonparty treating physicians. Records or communications in the possession of the treating physicians but not relevant to the underlying suit remained privileged. *Mutter*, 744 S.W.2d at 601. The trial court ordered the plaintiffs to sign an authorization completely waiving the physician-patient privilege. In response, the plaintiffs moved for a protective order and included safeguards in an authorization they consented to sign. The supreme court observed that the plaintiffs followed the correct procedure to protect the privileged information. *Id.* Three years later, in addressing the propriety of ex parte communications, the San Antonio court stated that one reason for permitting ex parte communications was that the plaintiff had the burden to invoke the trial court's protection for privileged material. *See Durst*, 70 S.W.3d at 238 ("[A] plaintiff may invoke the court's protection for privileged material, and it appears it is his burden to do so."). Again, we must presume that the legislature was aware of this case law when it enacted section 74.052. *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex.1990). Had the legislature intended to adopt a different rule, it could have done so. Because section 74.052 does not prohibit the issuance of a protective order to protect privileged information that is irrelevant to a health care liability claim, we conclude that the legislature did not intend to overrule or modify *Mutter* or *Durst*. Thus, we hold that section 74.052 did not change existing law in this area.

Collins points out that the challenged ex parte communications were held to be proper in *Durst, Rios,* and *Hogue*. However, the plaintiffs in those cases raised the issue of the ex parte communications for the first time at trial. None of the plaintiffs moved for a protective order or otherwise sought to restrict the defendants from engaging in ex parte communications with the plaintiffs' other treating physicians before the communications occurred. *Durst*, 70 S.W.3d at 236; *Rios*, 58 S.W.3d at 169; *Hogue*, 875 S.W.2d at 481. Further, none of the cases held that ex parte

communications must be permitted in all circumstances. *Durst,* 70 S.W.3d at 236; *Rios,* 58 S.W.3d at 169; *Hogue,* 875 S.W.2d at 481. Our holding is consistent with those cases.

### VII. ABUSE OF DISCRETION

 In the instant case, the trial court's order prohibits postsuit ex parte communications between Collins and Ms. Regian's nonparty treating physicians. Thus, the order does not prevent Collins from obtaining Ms. Regian's health information, but only excludes ex parte communications as a means for obtaining the information. The Regians listed seven physicians who had no relevant information and, thus, possessed only information still protected by the physician-patient privilege. However, they also asserted that the twenty-five physicians or health care providers who possessed relevant information also had some information that was not relevant to the suit and therefore still protected as well. The materials filed in this proceeding do not show that Collins challenged this assertion. Consequently, the trial court reasonably could have determined that the prohibition of ex parte communications was necessary to protect Ms. Regian's privileged information.[5] Therefore, after reviewing the record in this case, we cannot say that the trial court abused its discretion.

Because we have construed section 74.052 as not changing existing law regarding ex parte communications, and because we have concluded that the trial court reasonably could have found that a protective order was necessary in this case to protect privileged information, we hold that the trial court in this case did not abuse its discretion in prohibiting postsuit ex parte communications. While such a restriction has a significant impact in the presentation of a defense, we cannot conclude that so restricting Collins under the facts of this case constitutes an abuse of discretion, given the current state of the law.

### VIII. DISPOSITION

Having concluded that Collins has not shown that the trial court abused its discretion in granting the Regians's motion for protective order, we need not determine whether Collins has an adequate remedy by appeal. We *deny* the petition for writ of mandamus.

---

**5.** It is possible that a number of these health care providers' only contact with the Regians would be through the review of relevant, nonprivileged medical records, and thus all of the information known by those health care providers would be relevant and nonprivileged. However, we cannot make that determination from the record before us.