Sandra L. HOGUE and C.L. Hogue, Appellants,

v.

KROGER STORE # 107 and the Kroger Co., Appellees.

No. 01–92–00015–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 28, 1994.

Rehearing Denied April 28, 1994.

---

Steve Waldman, Houston, for appellant.

Brock C. Akers, Paula R. Robertson, Houston, for appellees.

Before MIRABAL, DUGGAN and HUTSON–DUNN, JJ.

## OPINION ON MOTION
## FOR REHEARING

MIRABAL, Justice.

We withdraw our earlier opinion, we substitute the following opinion in its stead, and we overrule appellants' motion for rehearing.

This is an appeal, after a jury trial, from a judgment in a premises liability case awarding $10,884.70 in damages to the plaintiffs, Sandra L. Hogue and C.L. Hogue. We affirm.[1]

---

1. Although the Hogues prevailed at trial, they complain the damage award "was far below the amount appellants contend is a reasonable sum for the damages proved by appellants at trial." Appellees Kroger Store # 107 and The Kroger Co. will be referred to collectively as "Kroger."

The evidence at trial showed the following: On May 20, 1988, Sandra Hogue fell in Kroger Store # 107. Ms. Hogue claims she slipped in water in the produce section. Ms. Hogue, a diabetic, testified she was not on medication at the time of the fall because her diabetes was under control. Immediately after the fall, Ms. Hogue requested a glass of orange juice because her blood sugar gets extremely low if she is startled. Ms. Hogue then finished her shopping. She testified that the day after the fall, she felt stiff, her back hurt, she had a dull headache, her elbow hurt, and she felt terrible.

Several days later, Ms. Hogue went to Ben Taub Hospital, where Dr. Ingrahm, a doctor who previously treated her for diabetes, examined her. Dr. Ingrahm scheduled an appointment for Ms. Hogue with Dr. Baskin, a neurosurgeon. In June of 1988, Dr. Baskin informed Ms. Hogue that she might have to undergo surgery. The thought of surgery scared her, so she did not return to Ben Taub for treatment.

Ms. Hogue did not see another doctor until September 1988, because she was scared of surgery and was involved with her daughter's health problems. In September, Ms. Hogue's attorney suggested she see Dr. Jacob. Dr. Jacob recommended surgery, but the thought of surgery frightened Ms. Hogue because she is a Jehova Witness and cannot accept a blood transfusion. Then Ms. Hogue saw Dr. DeLuca, who recommended injections into her spine instead of surgery.

Next, Ms. Hogue went to Dr. Granberry, who was recommended by her internist. Dr. Granberry informed her the injections might not work. Therefore, Ms. Hogue decided to go ahead with the surgery and returned to Dr. DeLuca. Neither Dr. Jacob nor Dr. DeLuca would perform the surgery without a blood transfusion, so Dr. DeLuca referred Ms. Hogue to Dr. Brodsky, an orthopedic surgeon, who would perform the operation without a blood transfusion. Dr. Brodsky performed the surgery in December of 1988.

At trial, the Hogues called Dr. Brodsky and Dr. Kozak, an orthopedic surgeon, by deposition. Dr. Brodsky stated that "[b]ased upon the history and based upon the accuracy and the veracity of that history and as-

suming that it is both correct and honest, then I think we would have a right to assume that the causation of the condition for which I treated her and operated upon her was the fall of May 20th, 1988." Dr. Brodsky also testified that pressure on Ms. Hogue's cauda equina nerves for many years may have predisposed her to physical complaints and that because of her diabetes, her nerves are extremely sensitive to trauma. Dr. Brodsky added that in his opinion, Ms. Hogue tends to exaggerate her complaints.

Dr. Kozak saw Ms. Hogue one time on referral from Dr. Baskin. Dr. Kozak testified that diabetes causes painful nerve disease, similar to the pain complained of by Ms. Hogue. He added, however, that Ms. Hogue's complaints far exceeded those expected of a diabetic because the majority of her symptoms arose from her back injury.

Kroger called Dr. Granberry, an orthopedic surgeon, as an expert witness. Dr. Granberry based his testimony on his one consultation with Ms. Hogue and his review of her medical records, including those of Ms. Hogue's internist, Ben Taub Hospital, Dr. Jacob, Dr. DeLuca, and "a whole slew of other folks." Dr. Granberry noted that records from Ben Taub showed that before the accident, Ms. Hogue complained of arthritis in her neck, and exam results had indicated she had decreased sensation in the right thigh and calf. Dr. Granberry also stated that Dr. Brodsky's surgical notes indicated that Ms. Hogue had bone spurs and osteoarthritis of the spine, with spinal stenosis that caused sciatic problems. He testified that due to Ms. Hogue's pre-existing conditions, she probably would have required the same surgery, even if she never fell at Kroger's. However, Dr. Granberry admitted that the fall aggravated Ms. Hogue's existing condition and accelerated her problem.

In their first and second points of error, the Hogues assert the trial court committed harmful error by limiting the cross-examination of Dr. Granberry and excluding evidence regarding the propriety of Dr. Granberry's private meeting with Kroger's counsel without Ms. Hogue's authorization.

Generally, the allowed scope of cross-examination is broad and wide-ranging. Texas practice permits the cross-examination to extend to *any matter relevant to the issues*. *Harrison v. Texas Employers Ins. Ass'n*, 747 S.W.2d 494, 498 (Tex.App.—Beaumont 1988, writ denied). The concept of relevancy permits inquiry into the witness' interest, bias, motives, inclinations, and prejudices. *Id.* However, the manner of cross-examination and its extent must rest in the sound discretion of the trial judge. *Id.*

The Hogues' counsel questioned Dr. Granberry about the fact he had met with Kroger's attorneys before trial, he was present at trial without subpoena, and he was being paid for his services by Kroger. Counsel for the Hogues then attempted to cross-examine Dr. Granberry about *the propriety* of his meeting privately with Kroger's counsel to discuss his treatment of his patient, Ms. Hogue. The following transpired:

> [By the Hogues' counsel] Q: Uh—would you check through your records and find for me the medical authorization which permits you to discuss the medical treatment of one of your patients with a stranger.
>
> [By Dr. Granberry] A: I'm sorry?
>
> Q: And, I mean [Kroger's counsel]
>
> A: I'm sorry, I don't know that.
>
> Q: You don't have such an authorization?
>
> [Kroger's counsel]: The authorization appears in the rules of procedure Judge that uh—uh—
>
> THE COURT: Overruled. You'll get your chance.
>
> [By the Hogues' counsel] Q: You are aware, Dr. Granberry, that a patient has a privacy interest, and that it's really inappropriate for you to engage in discussions with someone who does not have an authorization. Do you—are you aware of that?
>
> A: It was my understanding that in a lawsuit, that the records are subpoena-able and the—you can discuss the case at that point. I'm sorry, I didn't realize that it wasn't.
>
> [Kroger's counsel]: (indiscernible, not speaking clearly into a microphone)

> THE COURT: Sustain the objection. And, I'll instruct the jury as to any implication that the doctor's done anything improper, is inappropriate, incorrect, to be stricken from the record, you'll be instructed to disregard it. Let's move along.

The Hogues assert on appeal that, by meeting privately with Kroger's counsel without Ms. Hogue's authorization, Dr. Granberry violated Ms. Hogue's right to privacy and violated the physician-patient privilege. The Hogues argue they had a right to cross-examine Dr. Granberry about that.

The disclosure of physician-patient communications in judicial or administrative proceedings is governed by Tex.R.Civ.Evid. 509, and Tex.Rev.Civ.Stat.Ann. art. 4495b, § 5.08(g) (Vernon Supp.1993). Generally, confidential communications between a physician and patient are privileged and may not be disclosed. *Mutter v. Wood*, 744 S.W.2d 600 (Tex.1988). There are, however, exceptions to this general rule. The exception relevant here is in Rule 509(d)(4) which states:

> **(d) Exceptions.** Exceptions to confidentiality or privilege in court or administrative proceedings exist:
>
> (4) as to a communication or record relevant to an issue of the physical, mental or emotional condition of a patient in any proceeding in which any party relies upon the condition as a part of the party's claim or defense.

Tex.R.Civ.Evid. 509(d)(4). *See also* Tex.Rev. Civ.Stat.Ann. art. 4495b, § 5.08(g)(4) (Vernon Supp.1993).

The Hogues argue that although the rules permit the discovery of Dr. Granberry's opinion, *Mutter* prohibits a patient's doctor from meeting with the opposing party's counsel without the patient or her attorney present, unless the patient consents.

In *Mutter*, the trial court ordered the plaintiffs to sign an authorization completely waiving their physician-patient privilege as to all physicians who provided care or treatment. The supreme court specifically acknowledged that the physician-patient privilege was automatically waived as to the treating doctors to the extent they had records or

# 481

communications that were *relevant* to the suit. *Mutter,* 744 S.W.2d at 601. However, to the extent the treating doctors had records or communications that were *not relevant* to the suit, they remained privileged. Thus, the supreme court held that the trial court's order "should have been drawn more restrictively to respect whatever privileged communications or records might exist after suit was filed and to allow those privileges to be preserved." *Id.* at 601.

In the present case, Ms. Hogue waived the physician-patient privilege as to *matters relevant to this lawsuit.* TEX.R.CIV.EVID. 509(d)(4). Ms. Hogue met with Dr. Granberry *only once,* after the involved accident and before suit was filed, specifically for medical care in connection with her back injury allegedly sustained as a result of her fall at the Kroger store. There is no indication in the record that Dr. Granberry communicated any privileged information to Kroger's counsel. Accordingly, the trial court's conclusion that Dr. Granberry did not act improperly when he met privately with Kroger's counsel was reasonable.[2]

■ Because the focus of the Hogues' intended cross-examination of Dr. Granberry was the "impropriety of the meeting," we hold the trial court did not abuse its discretion when it disallowed such cross-examination. We overrule points of error one and two.

■ In their third point of error, the Hogues assert the trial court committed harmful error by commenting on the evidence and the weight of the evidence.

The Hogues specifically complain about the trial court's instruction to the jury to disregard any implication that the doctor did anything wrong in meeting with Kroger's counsel without authorization from Ms. Hogue. This instruction was neither a comment on the evidence nor on the weight of the evidence. The statement was merely part of the ruling by the trial court with regard to the evidence the trial court properly ruled

was inadmissible. We overrule point of error three.

In their fourth point of error, the Hogues assert that the trial court erred in entering judgment and denying their motion for new trial, because the jury verdict on damages was against the great weight and preponderance of the evidence.

■ When reviewing a factual sufficiency of the evidence challenge, the court of appeals must examine all of the evidence, *Lofton v. Texas Brine Corp.,* 720 S.W.2d 804, 805 (Tex.1986); *Glockzin v. Rhea,* 760 S.W.2d 665, 666 (Tex.App.—Houston [1st Dist.] 1988, writ denied), and, having considered and weighed all of the evidence, it should set aside the verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965); *Otis Elevator Co. v. Joseph,* 749 S.W.2d 920, 923 (Tex.App.—Houston [1st Dist.] 1988, no writ). The appellate court cannot substitute its opinion for that of the trier of fact and determine that it would reach a different conclusion. *Glockzin,* 760 S.W.2d at 666.

■ The Hogues argue that Drs. Brodsky and Kozak testified to the causal connection between Ms. Hogue's fall and her back surgery, and that Dr. Granberry did not refute this testimony. The Hogues claim that they proved medical expenses alone which exceeded $38,000, and therefore the jury award of less than one-third of that amount failed to award damages that were conclusively proved. Kroger counters that the jury's finding is supported by the testimony of Dr. Granberry, as well as the Hogues' witnesses, about Ms. Hogue's preexisting physical problems, including degenerative disc disease, sciatica, and diabetes, and her tendency to exaggerate the symptoms of her ailments.

Jury question number two asked the jury:

---

**2.** We note that in *Harrison,* there was apparently no dispute about the fact that the private meetings between defense counsel and the treating physician resulted in violations of "confidential, physician-patient privileges." 747 S.W.2d at 498. *Harrison* is, therefore, distinguishable from the present case.

What sum of money, if paid now in cash, would fairly and reasonably compensate Sandra Hogue for her damage, if any, resulting from the occurrence in question?

The jury answered that damages in the amount of $10,884.70 were sustained by Ms. Hogue in the past, and 0 damages would, in reasonable probability, be sustained by her in the future.

After reviewing all the evidence, we conclude that a reasonable jury might believe that much of Ms. Hogue's damages were not a result of her fall in the Kroger store. The evidence is sufficient to support the jury's answer to question number two.

In their fifth point of error, the Hogues complain that the trial testimony was poorly transcribed, resulting in an incomplete record. However, after the filing of the Hogues' brief in this case, the deficiencies in the record were cured to the Hogues' satisfaction. Therefore, this point of error is moot.

We affirm the judgment.