**Tereso De Jesus RIOS and Rose Herlinda Rios, Appellants,**

v.

**TEXAS DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION and Juan R. Cazares, Appellees.**

No. 04–00–00629–CV.

Court of Appeals of Texas, San Antonio.

July 25, 2001.

168

James F. Martin, Greer & Martin, L.L.P., Houston, for Appellant.

Kamilla L. Stokes, Assistant Attorney General, Tort Litigation Division, Austin, for Appellee.

Sitting TOM RICKHOFF, ALMA L. LÓPEZ and SARAH B. DUNCAN, Justices.

## OPINION

ALMA L. LÓPEZ, Justice.

Appellants raise issues concerning doctor-patient privilege, contributory negligence, and damages for pain and suffering in this appeal. We affirm the judgment.

### BACKGROUND

Tereso De Jesus Rios was involved in an automobile collision on July 23, 1993, with Juan Cazares, an employee of Texas Department of Mental Health and Mental Retardation ("MHMR"). Rios and his wife, Rose, sued MHMR for personal injury damages, loss of household services and loss of consortium. The jury found Rios thirty-five percent negligent and MHMR sixty-five percent negligent. The jury awarded Rios $5,000 for past medical costs, and found zero damages on Mrs. Rios's claims. This appeal followed.

### DR. GARZA–VALE'S TESTIMONY

Dr. Garza–Vale examined Rios during two office visits in March and April 1994 for injuries Rios claims were the result of the July 1993 accident. The doctor provided Rios with a "second opinion" on the

need for back surgery, advising against surgery at that time. Rios filed suit in September of 1994. In March 1998, appellees' counsel contacted Dr. Garza–Vale and asked him to review the subsequent medical record of Rios and render an expert opinion. Following notice to the parties, MHMR counsel deposed Dr. Garza–Vale. At the time, appellants were *pro se* and did not attend the deposition. After appellants' current counsel was engaged, the trial court ordered that Dr. Garza–Vale be redeposed prior to trial. The jury viewed both video-taped depositions of Dr. Garza–Vale's testimony. Appellants attempted to exclude Dr. Garza–Vale's testimony and assert on appeal that its admission into evidence constituted a violation of the physician-patient privilege.

■ Generally, confidential communications between physician and patient are privileged and may not be disclosed without the consent of the patient or the patient's representative. *See* TEX.R. EVID. 509(c); *Hogue v. Kroger Store No. 107,* 875 S.W.2d 477, 480 (Tex.App.—Houston [1st Dist.] 1994, writ denied). The rule is subject to a number of exceptions. *See* TEX.R. EVID. 509(e). In this case, the privilege does not apply because the medical communications involved are relevant to the condition upon which Rios is basing his claim for damages in this lawsuit. *See id.* at 509(e)(4); *R.K. v. Ramirez,* 887 S.W.2d 836, 842 (Tex.1994) (exception to privilege applies when "condition itself is a fact that carries some legal significance"); *Hogue,* 875 S.W.2d at 481. Because Rios's physical condition was the subject of his claim in the lawsuit, his medical condition relevant to the accident in question was not protected by Rule 509. *See id.; Mutter v. Wood,* 744 S.W.2d 600, 601 (Tex.1988)(orig. proceeding). Rios's reliance on the *Mutter* opinion is misplaced. The disclosures attempted in that case were so broad as to

encompass medical information that was not relevant to the claims at issue. The supreme court reaffirmed that medical matters unrelated to the litigated claims remained subject to the privilege. *See id.*

Appellants also complain that opposing counsel's *ex parte* contact with Dr. Garza–Vale was improper and should be declared impermissible because it conflicts with a physician's fiduciary duty of loyalty to his patient and invites improper influence that threatens the relationship of trust confidence. Appellants appear to be seeking the establishment of a new privilege as they cite to no medical ethics rules or legal rules which support this position. However, they claim that such *ex parte* communications have been or should be prohibited by Texas and federal courts. We do not find the construction appellants seek to impose in the cases cited in their brief. For example, in *Travelers Insurance Co. v. Woodard,* the plaintiff in a worker's compensation case had refused to sign a blanket waiver of confidentiality to all medical records. The trial court did not permit the defense to reveal her refusal to the jury, and the appellate court agreed, stating "we do not believe there is anything in the rules requiring a party to grant his adversary the right to have access to the files of his doctors and other witnesses, together with the right to interrogate them outside of his presence and hearing." 461 S.W.2d 493, 496 (Tex.Civ.App.—Tyler 1970, writ ref'd n.r.e.). The court's comment refers to the defendant's effort to delve into irrelevant, confidential matters and the plaintiff's refusal to sign a broader waiver than necessary to establish her claim. Likewise, the *Mutter* case concerns an attempt by court order to extend the privilege beyond the litigation waiver of Rule 509 to medical matters that remained privileged despite the pending lawsuit. *Mutter,* 744 S.W.2d at 601. Appellants presented no evidence that MHMR elicited

confidential, privileged medical information as a result of its interview with Dr. Garza–Vale. Rios had provided an authorization to release all his medical records. Appellees contacted Dr. Garza–Vale more than four years following his consultation with Rios, and at a time when the doctor did not consider himself a "treating physician" to Rios.

Nor do the federal cases attempt to narrow the exception to the Texas doctor-patient privilege. *See Horner v. Rowan Companies*, 153 F.R.D. 597 (S.D.Tex.1994); *Perkins v. United States*, 877 F.Supp. 330, 333 (E.D.Tex.1995). Rather the cases cited by appellants merely show half of the debate as the split in circuits demonstrates in federal jurisdictions.[1] *See also Stewart*

1. The *Horner* and *Stewart* opinions reveal competing public policy concerns about *ex parte* communications with treating physicians. The *Horner* court foresees the communications spilling over into areas that remain privileged:

> Unacceptable problems are inherently attendant to a contrary view. When a treating physician is interviewed *ex parte* by defense counsel, there are no safeguards against the revelation of matters irrelevant to the lawsuit and personally damaging to the patient, and the potential for breaches in confidentiality can have a chilling effect upon the critically important underlying relationship. Such interviews also create situations which invite questionable conduct. They may disintegrate into a discussion of the adverse impact the jury award may have on the rising cost of medical insurance rates. *Manion v. N.P.W. Medical Ctr., Inc.,* 676 F.Supp. 585 (M.D.Pa.1987), criticized by *MacDonald v. United States*, 767 F.Supp. 1295 (M.D.Pa.1991). They may result in attempts to dissuade the doctor from testifying. *Harlan v. Lewis*, 982 F.2d 1255 (8th Cir.), subst. opinion, in part, reh'g denied, 1993 U.S.App. LEXIS 3403, *cert. denied, Hall v. Harlan*, 510 U.S. 828, 114 S.Ct. 94, 126 L.Ed.2d 61 (1993). They may result in defense counsel abusing the opportunity to interrogate the physician by privately inquiring into facts or opinions about the patient's mental and physical health or history which might neither be relevant to the law suit nor lead to the discovery of admissible evidence. Moreover, while Rule 509 removes the privilege in regard to information concerning any medical condition in issue, information not related to that condition remains privileged. The decision to waive the privilege as to unrelated matters belongs to the patient; yet, if *ex parte* interviews are permitted, it would be left to the physician to determine what information is subject to disclosure and what remains privileged. The doctor is not only unskilled in making that determination, any error in judgment could, in addition, expose the physician to liability arising from an improper disclosure. *Harlan*, 982 F.2d at 1264. Requiring the contact with treating physicians to occur only in the context of formal discovery relieves the physician of this responsibility, protects him from inadvertent liability, and protects any information still privileged by assuring plaintiff's representative will be in a position to timely assert the privilege where appropriate. Formal discovery, on the record, with notice and an opportunity to other parties to be present and to participate in the proceedings, is simply the fairest and most satisfactory means of obtaining discovery from a treating physician. *Manion*, 676 F.Supp. at 589. Besides, this rule regulates only how defense counsel may obtain information from a treating physician, not the substance of what is discoverable. *Id.* at 593.

*Horner v. Rowan Companies, Inc.,* 153 F.R.D. 597, 601–02. The *Stewart* court does not see a chilling effect to such access and would prevail upon the attorney's sense of professionalism to act responsibly in conducting such interviews:

> Public policy considerations also do not justify restricting the means by which defense counsel may gain access to a fact witness such as a plaintiff's treating physician. That a treating physician's disclosures to defense counsel might have a chilling effect on the physician-patient relationship is questionable given that "[o]nly a foolish patient would withhold relevant information from his or her treating physician and jeopardize his or her health on the supposition that the information might be relevant in a subsequent lawsuit." *Felder [v. Wyman]*, 139 F.R.D. [85]at 89 [(D.S.C. 1991)];

*v. Women in Community Service, Inc.,* 1998 WL 777997 at *3 (D.Nev. Oct 7, 1998). In *Horner,* the district court, acknowledging that there was no rule or legal authority prohibiting *ex parte* communications with treating physicians of an opposing party, sought to establish a new rule of procedure to cover the matter in federal courts. *Horner,* 153 F.R.D. at 601. It is not the role of this intermediate court to craft a new rule where none currently exists. Appellants' first issue is overruled.

■ Appellants' challenge to the sufficiency of the evidence to support a finding of contributory negligence was waived upon appellants' failure to include the issue in their motion for new trial. TEX.R. CIV. P. 324. The second issue is overruled.

### PAIN AND SUFFERING

■ Appellants assert in their third issue that the jury's award of past medical expenses is in conflict with its decision to award no damages for past pain and mental anguish. They argue that because there is uncontroverted evidence of an objective injury, the zero damage finding on pain and mental anguish is against the great weight and preponderance of the evidence.

■ Appellate review recognizes the duty to reconcile conflicting jury findings if at all possible. *Signal Oil & Gas v. Universal Oil Prod.,* 572 S.W.2d 320, 326 (Tex. 1978). The Supreme Court, in *Traywick v. Goodrich,* 364 S.W.2d 190 (Tex.1963), repeated the rule: "It will never be presumed that jurors intend to return conflicting answers, but the presumption is always to the contrary. Courts properly refuse to strike down answers on the ground of conflict, if there is any reasonable basis upon which they may be reconciled." *Id.* at 191.

■ We do not find an irreconcilable conflict in these two jury findings. The medical records and the testifying experts presented conflicting facts and opinions, both objective and subjective, from which the jury was entitled to draw its findings. The jury could find damages to compensate for the diagnostic testing and doctors' visits following a minor collision and also find that the injury sustained did not produce compensable damages for pain and mental anguish. The jury could also have considered the possibility that any pain Rios experienced was due to an age-related degeneration. *See Huber v. Ryan,* 627

---

see also WRIGHT & GRAHAM, supra, § 5522, at 73 (noting that critics of the physician-patient privilege argue that the possible revelation of secrets in court is not in the forefront of a patient's mind when he or she decides how open to be with their physician). The concern raised in *Horner* that defense counsel might take the opportunity during an *ex parte* interview to engage in questionable conduct was wisely rejected in *[Doe v.] Eli Lilly & Co.[, Inc.,* 99 F.R.D. 126 (D.D.C.1983)] by reference to the remedy of sanctions. Moreover, the *Horner* concern seems to be premised on the fallacy that" questionable conduct during an *ex parte* interview could only occur with defense counsel. Quite simply, policy considerations which support giving plaintiffs "inordinate control over a witness's disclosures

and ... allowing plaintiff[s] to monitor the work of defendants in preparing their case," *Felder,* 139 F.R.D. at 90, act in favor of an unfair discovery process and are not persuasive.

Weighing the absence of both a physician-patient privilege and a persuasive public policy ground against a discovery framework designed to be just, speedy, and inexpensive, the Court concludes that *ex parte* communications by defense counsel with a plaintiff's treating physician are not prohibited. Prior to such a communication, however, defense counsel should inform the physician that he or she is not required to speak. *Lake [v. Steeves],* 161 F.R.D. [441] at 443 [(D.Kan. 1994)].

*Stewart v. Women in Community Service, Inc.,* 1998 WL 777997, at*4, *5.

S.W.2d 145, 146 (Tex.1981)(holding that jury's findings of injury and zero damages for past pain and suffering could be reconciled); *Blizzard v. Nationwide Mut. Fire Ins. Co.*, 756 S.W.2d 801, 805 (Tex.App.—Dallas 1988, no writ). When no conflict exists, the appellate court cannot use the jury's answer to one question to challenge the insufficiency of the evidence supporting the jury's answer to another question. *Huber*, 627 S.W.2d at 146. Appellants' third issue is overruled. The judgment of the trial court is affirmed.