Lola Mae **DURST** and Clarence Durst, Appellants,

v.

## HILL COUNTRY MEMORIAL HOSPITAL, Appellee.

No. 04–00–00540–CV.

Court of Appeals of Texas, San Antonio.

Dec. 19, 2001.

R. Blake Zuber, Patterson & Wagner, L.L.P., San Antonio, for Appellee.

Sitting: ALMA L. LÓPEZ, Justice, CATHERINE STONE, Justice, and KAREN ANGELINI, Justice.

## OPINION

ALMA L. LÓPEZ, Justice.

This appeal arises from a medical malpractice suit brought by appellants Lola Mae and Clarence Durst against appellee Hill Country Memorial Hospital. We are asked to determine if the trial court erred in (1) failing to strike the testimony of Lola Mae's treating physicians after they had ex parte contact with the hospital's counsel, (2) permitting unqualified expert witnesses to testify, (3) not permitting the Dursts to impeach medical experts with medical literature, and (4) admitting competency reports for a treating nurse. We affirm.

### FACTUAL & PROCEDURAL BACKGROUND

Lola was admitted into the emergency room of Hill Country Hospital at the age of 71 suffering from shortness of breath, diminished consciousness, and severe neck pain. Because of a previous mastectomy on her left side, the appropriate treatment protocol called for any intravenous (IV) line to be inserted into her right hand, not her left. The testimony of Kathy Parsons, the treating nurse, her hospital notes, and the testimony of other nurses on call indicated that Parsons inserted an IV into Lola's *right* hand on the first attempt. However, by the time Lola was admitted from the emergency room into the hospital, she had a bandage on her *left* hand testified to by her daughter, son-in-law, and one of her treating physicians. Lola was diagnosed with endocarditis, an infection of the heart lining, and with septicemia caused by what is colloquially referred

Roger D. Button, Attorney At Law, Dallas, Scott L. Steele, Steele & Steele, L.L.P., Brownwood, for Appellant.

to as the "flesh-eating bacteria." After several days of treatment, she was released from the hospital. The discharge notes from another of her treating physicians noted she left the hospital with pain in her left hand, most likely from an infected IV site.

After she left the hospital, the blood infection in Lola's hand worsened. She was diagnosed with septic arthritis in that hand, developed carpal tunnel syndrome—a disorder causing pain and loss of function in the hand and wrist—and ultimately had to undergo hand surgery. She continues to experience pain and loss of function in her left hand, and her ability to work in her family-owned bakery has been compromised. She and her husband sued the hospital for medical malpractice, seeking actual and punitive damages for pain and suffering and loss of consortium and household services, and attorney's fees. Before the start of trial, the hospital's attorneys had ex parte contact with two of the treating physicians whom they planned to call as witnesses.

At the end of the trial, in response to the first question asking whether the negligence of the hospital, a nurse, or any person *trained in blood collection* proximately caused the injury to Lola's hand, the jury responded with a unanimous "No."

## STANDARD OF REVIEW

■ Each issue raised by the Dursts is reviewed under an abuse of discretion standard. A trial court abuses its discretion if it acts without regard for any guiding rules or principles. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex.1995). To reverse a judgment based on the admission or exclusion of evidence, a party must show the trial court erred and that the error was reasonably calculated to and probably did cause rendition of

an improper judgment. *Id.* We customarily examine the full record on appeal to determine if the error was reversible, but because we have here a designated transcript, we consider this partial record the entire record for the purposes of our review. TEX.R.APP.P. 34.6(c).

## EX PARTE DISCOVERY

In issue one, the Dursts contend the trial court abused its discretion when it did not strike the testimony of doctors Peter Fisher, Richard Thorner, Richard Fetchick, and David Cantu because there was ex parte contact between the hospital's counsel and these treating physicians. The hospital moved for summary judgment and attached in support affidavits from Dr. Richard Fetchick and Dr. Richard Thorner that were prepared without any participation by the Dursts' counsel. In addition, counsel for the hospital had brief ex parte conversations with Drs. Fisher and Cantu.

■ Generally, confidential communications between a physician and patient are privileged and may not be disclosed. *Mutter v. Wood*, 744 S.W.2d 600 (Tex.1988). Section 159.002 of the Texas Occupations Code and Rule 509(c)(2) of the Texas Rules of Evidence specifically provide that records of the identity, diagnosis, evaluation or treatment of a patient are confidential and privileged and may not be disclosed. *See* TEX. OCC.CODE ANN. § 159.002(b) (Vernon Pamph.2001); TEX.R. EVID. 509(c)(2). Further, the Texas Health and Safety Code provides that all health care information found in hospital records is privileged and cannot be disclosed without authorization. *See* TEX. HEALTH & SAFETY CODE ANN. § 241.151(2). "Health care information" is defined as "information recorded in any form or medium that identifies a patient and relates to the histo-

ry, diagnosis, treatment, or prognosis of a patient." *Id.*

There are, however, a number of exceptions to this privilege. *See* Tex. Occ.Code Ann. §§ 159.003–.004; Tex. Health & Safety Code Ann. § 241.153; Tex.R. Evid. 509(e). The exceptions relevant here are found in the Occupations Code, which provides, "An exception to the privilege of confidentiality in a court or administrative proceeding exists in a proceeding brought by a patient against a physician, including a malpractice proceeding" or "in a civil action or administrative proceeding, if relevant, brought by the patient or a person on the patient's behalf, if the patient or person is attempting to recover monetary damages for a physical or mental condition including the patient's death." *See* Tex. Occ.Code Ann. §§ 159.003(a)(1)(A), (4). The Rules of Evidence contain a similar provision. An exception to confidentiality or privilege exists "as to a communication or record relevant to an issue of the physical, mental or emotional condition of a patient in any proceeding in which any party relies upon the condition as a part of the party's claim or defense." Tex.R. Evid. 509(e)(4). However, neither the Occupations Code nor Rule 509 explicitly addresses ex parte communication when an exception applies to physician-patient confidentiality. The Dursts argue a reasonable construction of the Occupations Code inexorably leads to the conclusion that the only allowed methods of discovery are oral and written depositions conducted after notice to the plaintiff's attorney; they urge us to conclude ex parte communications are barred. The Dursts acknowledge that the treating physicians were free to offer the information that was tendered at trial, but challenge the means by which the information was obtained. The hospital, however, argues that ex parte

discovery, including phone calls to physicians, is permitted.

■ We recognize there are public policy reasons that would support a prohibition against ex parte contact between a plaintiff's treating physician and defendant's counsel. *See, e.g., Horner v. Rowan Companies, Inc.,* 153 F.R.D. 597, 601 (S.D.Tex.1994) (when treating physician is interviewed ex parte by defense counsel, there are no safeguards against revelation of matters irrelevant to the lawsuit and personally damaging to the patient, and the potential for breaches in confidentiality can have a chilling effect upon the critically important underlying relationship); *Perkins v. United States,* 877 F.Supp. 330, 332 (E.D.Tex.1995) (privately contacting a physician could expose the physician to civil liability or professional sanctions); *see also Travelers Ins. Co. v. Woodard,* 461 S.W.2d 493, 496 (Tex.Civ.App.—Tyler 1970, writ ref'd n.r.e.) (noting there is nothing in the rules requiring a party to grant his adversary the right to have access to the files of his doctors and other witnesses, together with the right to interrogate them outside of his presence and hearing). Given the potential for disclosure of irrelevant (and thus privileged) information during ex parte communications, perhaps the wisest course of conduct is for defense counsel to obtain information from the plaintiff's treating physicians through formal discovery measures. Nonetheless, this court has recently held that there is no specific rule prohibiting ex parte communications between a plaintiff's treating physician and defense counsel. *See Rios v. Texas Dep't of Mental Health & Mental Retardation,* 58 S.W.3d 167 (Tex.App.—San Antonio 2001, no pet.); *see also Hogue v. Kroger Store No. 107,* 875 S.W.2d 477, 481 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (holding ex parte meeting between patient's doctor and defense counsel not

improper).[1]

■ Faced with a similar challenge to ex parte contact between a treating physician and defense counsel, this court declined to narrow the current exception to the Texas doctor-patient privilege, noting that it is not the role of this court to craft a new rule where none currently exists. *Rios* at 171. An additional reason to permit ex parte communication is that, in a practical sense, a doctor bears the burden of refraining from revealing irrelevant (and thus privileged) matters when responding to requests for discovery pursuant to a malpractice claim brought under article 4590i, the Texas Medical Liability and Insurance Improvement Act. *See* TEX. REV.CIV. STAT. ANN. art. 4590i, § 13.02(g) (no response required where particular interrogatory or discovery request is clearly inapplicable). In addition, a plaintiff may invoke the court's protection for privileged material, and it appears it is his burden to do so. See *Mutter*, 744 S.W.2d at 601 (citing *Martinez v. Rutledge*, 592 S.W.2d 398, 401 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.)), in which the court noted plaintiff could have requested that the court require the examining or treating doctors not be questioned out of his presence, or require delivery of records for in camera inspection to determine materiality or relevancy.

■ While we understand the concerns expressed in the concurrence, we respectfully disagree that our ruling today broadens the existing parameters of permissible discovery. The *Mutter* authorization improperly waived all privileged information including irrelevant information that any treating physician might possess on their patient. The supreme court expressly disapproved of a court-ordered authorization of such magnitude. *Mutter*, 744 S.W.2d at 600–601. It confirmed that records not relevant to the underlying action remained subject to privilege. *Id.* There is nothing in this record to indicate that the ex parte contact with a physician four years after he had given a second opinion on the plaintiff's condition delved into areas of privilege or irrelevant personal matters. From what we can glean from this record, both the physician and the defense attorney, guided by their respective professional ethics, operated within the boundaries of the applicable exceptions to Rule 509 and the Occupations Code. We expect no less from either profession in their pursuit of truth.

We cannot agree with appellant that striking the testimony of the doctors involved would be an appropriate remedy even if we were to hold that ex parte communications should be barred. Nor is reversal appropriate here. We may not reverse unless the error complained of probably caused the rendition of an improper judgment or prevented an appellant from properly presenting the case to the appellate court. TEX.R.APP. P. 44.1(a). The Dursts have not demonstrated how they were harmed by the ex parte contact, have not identified any privileged communications improperly disclosed, or offered any authority to show that the alleged error is immune to harm analysis. Despite ruling in *Perkins* that ex parte communication was improper, the court denied plaintiff's motion to strike the physician's testimony predominantly because there was no indication of bad faith on the part of counsel and the testimony of the physicians was necessary to ensure a fair trial. *Perkins*, 877 F.Supp. at 334. These conditions are equally applicable here.

Accordingly, we overrule issue one.

---

1. In the absence of an opportunity for the Supreme Court to confront this issue, we would respectfully invite appropriate committees of the State Bar of Texas to craft more specific guidance to counsel on both sides of the bar.

## Expert Testimony

In issue two, the Dursts challenge the qualifications of Drs. Ramsay, Kottman, and Cantu, none of whom are infectious disease specialists, to testify as experts when the injury alleged was an infection. A witness is qualified to testify as an expert if he has the appropriate knowledge, skill, experience, training, or education. Tex.R. Evid. 702. Physicians are not automatically qualified as experts merely because they possess a medical degree. *See Broders v. Heise*, 924 S.W.2d 148, 152 (Tex.1996). The inquiry must be into the expert's actual qualification. *Id.* at 153. The proponent must establish that the expert has knowledge, skill, experience, training, or education regarding the specific issue before the trial court which would qualify the expert to give an opinion on that particular subject. *See id.* The admission of expert testimony is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. *See Gammill v. Jack Williams Chevrolet*, 972 S.W.2d 713, 718–19 (Tex.1998). Here, however, the hospital established the qualifications of each of these doctors to testify regarding the cause of Lola's infection. The record shows (1) Dr. Ramsay specializes in family practice but is experienced in administering IV's and has treated patients with cellulitis and bone and joint infections; (2) Dr. Kottman specializes in emergency medicine, has learned how to treat septicemia, and has treated patients with bone and joint infections; (3) Dr. Cantu, Lola's family physician, specializes in family practice but has treated patients with septic arthritis resulting from blood-borne bacteria. Based on these doctors' experience treating patients with infections, we hold the trial court did not abuse its discretion in admitting their expert testimony. *See Simpson v. Glenn*, 537 S.W.2d 114, 116 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.) (trial court abuses discretion when it excludes testimony of qualified expert).

We overrule issue two.

## Exclusion of Learned Treatises

In issue three, the Dursts contend the trial court erred in denying their offer of learned treatises to rebut and impeach the testimony of the hospital's experts. The hospital contends the treatises were not produced during discovery and no proper predicate was laid for their admission. The trial court sustained the hospital's hearsay objection. Evidentiary rulings are not usually reversible unless the appellant demonstrates that the whole case turns on the particular evidence excluded or admitted. *See Texaco, Inc. v. Pennzoil, Co.*, 729 S.W.2d 768, 837 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). Learned treatises are not excluded by the hearsay rule, even if the declarant is available as a witness, and are admissible:

> [t]o the extent called to the attention of an expert witness upon cross-examination or relied upon by him in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice. If admitted, the statements may be read into evidence but may not be received as exhibits.

Tex.R. Evid. 803(18). An expert witness may properly be impeached by asking whether he or she agrees or disagrees with the statements contained in treatises and scientific materials; however, such cross-examination is limited to publications which the witness recognizes as authoritative or publications upon which the expert

has relied. *Carter v. Steere Tank Lines, Inc.*, 835 S.W.2d 176, 182 (Tex.App.— Amarillo 1992, writ denied). The record shows that when the hospital's counsel conducted a voir dire of the Dursts' expert, Dr. Emilio Torres, out of the jury's presence, it was evident he was unfamiliar with the articles the Dursts sought to admit. Dr. Torres's expert opinion, however, mirrored the conclusions reached in the articles; contrary to the hospital's experts, he testified he believed Lola's injury was the direct result of improper IV insertion attempts.

Because the jury was able to hear and consider Torres's opinion, which referred to the excluded learned treatises and was based on the studies contained in these, the Dursts cannot show the outcome of the case was affected by the exclusion of the treatises even if the trial court erred in excluding them. Therefore, we cannot reverse on this basis. *See* Tex.R.App. P. 44.1(a).

We overrule issue three.

### Admission of Personnel Records

In issue four, the Dursts argue the trial court erred in admitting documents regarding nurse Parson's competency to insert an IV line because the documents were not timely produced in response to a discovery request. The Dursts contend they discovered at trial that the hospital had withheld a record showing that Parsons was trained in and judged competent to administer IV's. They further argue they had no choice but to non-suit Parsons after the documents were admitted, and that the hospital emphasized the non-suit in closing arguments, ultimately resulting in an improper verdict.

■ The hospital contends it made Parson's personnel file, including the objected-to documents, available to the Dursts' counsel. In a letter dated March 28, 2000 addressed to the Dursts' counsel after they had reviewed the file, the hospital acknowledged the Dursts' examination of the file in February and attached documents that had been requested by them. Included in the requested documents were the contested exhibits. There is no evidence to support the Dursts' contention that the documents admitted were concealed. It is apparent from the record that Parsons is qualified to administer IV's. Moreover, her supervisor and fellow nurses testified Parsons had been trained in, and was considered competent in, administering IV's. The trial court did not abuse its discretion in admitting the documents confirming this. We overrule issue four.

### Conclusion

We affirm the trial court's judgment.

Concurring opinion by CATHERINE STONE, Justice.

CATHERINE STONE, Justice, concurring.

I concur with the majority opinion in all respects save the majority's broad conclusion that ex parte contact between a patient's treating physician and opposing counsel is not prohibited. Although I agree we should affirm the trial court's judgment, I cannot agree that any form of ex parte communication between a patient's treating physician and opposing counsel should be permitted. I fear that our resolution of the issue in this case brings us one step closer to the complete abrogation of the physician-patient privilege whenever a patient sues a health care provider or presents a claim in which the patient is attempting to recover damages for a physical or mental condition.

This court determined in *Rios v. Texas Dep't of Mental Health & Mental Retarda-*

*tion* that the ex parte communication that transpired in that case was not improper. *See* 58 S.W.3d 167 (Tex.App.—San Antonio 2001, no pet.). The majority relies on *Rios* to determine that the ex parte communication here is also permissible. However, the scenario before us is quite different. In *Rios*, after notice to the parties, defendant's counsel deposed the plaintiff's treating physician. *Id.* at 169. At the time, the plaintiffs were pro se and did not attend the deposition. After the plaintiffs engaged counsel, the trial court ordered that the treating physician be redeposed before trial, and the jury viewed both video-taped depositions. *Id.* Here, the ex parte communication did not occur as part of formal discovery. There was no notice, no deposition, and no opportunity to participate.

Moreover, the decision in *Rios* does not address the essence of the Texas Supreme Court's holding in *Mutter v. Wood*, 744 S.W.2d 600 (Tex.1988). *Mutter* concerned a mandamus proceeding arising from a medical malpractice action. *Id.* The trial judge ordered the Mutters to sign an authorization permitting the defendant-hospital's attorney to discuss the medical care and treatment of their deceased son with the treating physicians and health care providers. *Id.* Although the authorization did not require that the physicians talk with the hospital's attorney, it completely waived the Mutters' physician-patient privilege. *Id.* The court determined that because the disclosures attempted were so broad as to encompass medical information that was not relevant to the claims at issue, the blanket authorization the Mutters were ordered to sign was impermissible. *Id.* at 601. This court acknowledged the holding in *Mutter* but, because the conduct complained of in *Rios* did not involve a blanket authorization form, concluded the plaintiff's reliance on *Mutter*

was misplaced. *See Rios*, 58 S.W.3d at 169–70.

The language in *Mutter* suggests that the court was concerned not only with too broad an authorization, but also with the scope of the patient-physician privilege. The court noted that such a broad consent provided "no reasonable method to allow the [plaintiffs] to preserve whatever claims of privilege they might have *because it would effectively allow defendant's counsel to question the physicians outside the presence of plaintiff's counsel. Such an authorization fails to properly balance the competing interests of the parties in the underlying case.*" *Mutter*, 744 S.W.2d at 600 (emphasis added). Our holding today permits precisely what the court in *Mutter* sought to avoid—allowing defense counsel to question a physician outside the presence of plaintiff's counsel, thus failing to properly balance the competing interests of the parties. Under this ruling, the defense counsel, and not the court, determines what is relevant to the litigation.

The remedy the appellants seek in this case is to strike the testimony of the four treating physicians. I agree with the majority that such a remedy is not warranted because the Dursts have not demonstrated any harm arising from the ex parte communication. Accordingly, I concur in the judgment.