NO.
12-06-00078-CV

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

§                      

IN RE:

§                      ORIGINAL
PROCEEDING

LESTER COLLINS, M.D.

§                      

                                                                                                                                                           


OPINION

            In this
original mandamus proceeding, Lester Collins, M.D. complains of the trial court’s
order granting a motion for protective order filed by Kelly Regian and James
Regian, the real parties in interest. 
The issue presented is whether a trial court abuses its discretion by
prohibiting ex parte communications with a claimant’s nonparty treating
physicians when the claimant has signed a statutorily required authorization
for release of health information and filed a medical malpractice suit against
a treating physician.[1] 
This issue is one of first impression. 
We deny the petition for writ of mandamus.

 

I.  Background








            The Regians
sued Collins and ETMC Neurological Institute (“ETMC”) alleging that Collins and
ETMC failed to timely diagnose Ms. Regian’s nasopharyngeal carcinoma.  Prior to filing suit, Ms. Regian gave notice
of her claim as required by Texas Civil Practice and Remedies Code, section
74.051.  The notice was accompanied by an
authorization for release of health information in the form prescribed by Texas
Civil Practice and Remedies Code, section 74.052.  In the authorization, Ms. Regian listed a
number of physicians and health care providers who had information relevant to
the Regians’s claim against Collins and ETMC. 
As permitted by the authorization, she also listed several physicians
and health care providers to which the authorization did not apply because she
contended the health care information in their possession was not relevant to
the claimed damages or to her physical, mental, or emotional condition arising
out of her claim. 

            After the
suit was filed, the Regians filed a motion for protective order seeking to 1)
prevent Collins and ETMC from having ex parte communications with any of Ms.
Regian’s nonparty treating physicians, 2) require Collins and ETMC to disclose
any contacts previously made with Ms. Regian’s nonparty treating physicians,
and 3) obtain any notes or memoranda describing the content of those
contacts.  The Regians alleged that these
protections were necessary to safeguard information in the possession of her
nonparty treating physicians that was not relevant to the lawsuit and therefore
protected by the physician-patient privilege. 
After a hearing, the trial court granted the motion in part and signed
an order prohibiting Collins and ETMC from having ex parte communications with
any of Ms. Regian’s nonparty treating physicians.  This original proceeding followed.

 

II.
Prerequisites to Mandamus

            Mandamus will issue to correct a
clear abuse of discretion when there is no adequate remedy by appeal.  Walker v. Packer, 827 S.W.2d
833, 839-40 (Tex. 1992).  To determine
whether the trial court clearly abused its discretion, the reviewing court must
consider whether the challenged ruling or order was one compelled by the facts
and circumstances or was arbitrary, unreasonable, or reached without reference
to any guiding rules or principles.  In
re Huag, 175 S.W.3d 449, 451 (Tex. App.–Houston [14th Dist.] 2005,
orig. proceeding).  A clear failure by
the trial court to analyze or apply the law correctly will constitute an abuse
of discretion.  Walker, 827
S.W.2d at 840.  Interpretation of a
statute is a pure question of law over which the trial court has no
discretion.  In re Canales,
52 S.W.3d 698, 701 (Tex. 2001).  An
appellate remedy is “adequate” when any benefits to mandamus review are
outweighed by the detriments.  In
re Prudential Ins. Co. of Am., 148 S.W.3d 124, 136 (Tex. 2004).  Whether an appellate remedy is adequate
depends heavily on the circumstances presented and is better guided by general
principles than by simple rules.  Id.
at 137.  The relator has the burden of
showing an abuse of discretion by the trial court and the inadequacy of appeal
as a remedy.  In re E. Tex. Med.
Ctr. Athens, 154 S.W.3d 933, 935 (Tex. App.–Tyler 2005, orig.
proceeding).

 

III. 
Physician-Patient Privilege

            As a general
rule, confidential communications between a physician and patient are
privileged and not subject to disclosure. 
See Tex. R. Evid. 509(c).  The purpose of the privilege is twofold: 1)
to encourage the full communication necessary for effective treatment and 2) to
prevent unnecessary disclosure of highly personal information.  R.K. v. Ramirez, 887 S.W.2d
836, 840 (Tex. 1994).  The
physician-patient privilege is not without exceptions.  See Tex.
R. Evid. 509(e).  Exceptions
pertinent to this case are 1) when the proceedings are brought by the patient
against a physician and the disclosure is relevant to the claims or defense of
a physician; 2) when the patient submits a written consent to the release of
the privileged information; and 3) when the communication or record is relevant
to an issue of the physical, mental, or emotional condition of a patient where
a party relies upon the condition as a part of the party’s claim or defense.[2]  Tex.
R. Evid. 509(e)(1), (2), (4).  The
physician-patient privilege remains in effect for communications not relevant
to the underlying suit.  Mutter v.
Wood, 744 S.W.2d 600, 601 (Tex. 1988).

 

IV.  Ex Parte Communications–Arguments of the
Parties

            Collins
contends that section 74.052 of the Texas Civil Practice and Remedies Code
constitutes a complete waiver of the physician-patient privilege for relevant
health information and “includes the verbal as well as the written.”  See Tex.
Civ. Prac. & Rem. Code Ann. § 74.052(c) (Vernon 2005). The Regians
do not disagree.  Collins further argues,
however, that “verbal” health information may be obtained through ex parte
communications with nonparty treating physicians and  that the trial court had no discretion to
prohibit these communications.  By
granting the Regians’s motion for protective order, Collins asserts, the trial
court abused its discretion and prevented him from using the statutorily
required medical authorization in the manner contemplated by section 74.052.

            The Regians
contend that no Texas law or rule expressly prohibits ex parte communications
or states that such communications are permissible.  Relying on Mutter, they urge
that it is within the sound discretion of the trial court, on the claimant’s
motion, to enter a protective order prohibiting ex parte communications with
nonparty treating physicians.  See Mutter,
744 S.W.2d at 601.

 

V.  Ex Parte Communications–Construction of
Section 74.052

            Our
resolution of the issue presented here turns on the meaning of section
74.052.  In analyzing the issue, we apply
the customary principles of statutory construction.

            A.  Principles of Statutory Construction.  In construing a statute, our primary
objective is to determine and give effect to the legislature’s intent in
enacting it.  McIntyre v. Ramirez,
109 S.W.3d 741, 745 (Tex. 2003).  In
determining legislative intent, we examine the entire act, not just isolated
portions of it.  City of San
Antonio v. City of Boerne, 111 S.W.3d 22, 25 (Tex. 2003).  We start with the plain and common meaning of
the statute’s words.  McIntyre,
109 S.W.3d at 745.  Unless the statute is
ambiguous, we determine the legislature’s intent from the language of the
statute itself.  Continental Cas.
Co. v. Downs, 81 S.W.3d 803, 805 (Tex. 2002).  We must presume that every word of the
statute has been used for a purpose and that every word excluded from the
statute has been excluded for a purpose. 
Laidlaw Waste Sys., Inc. v. City of Wilmer, 904 S.W.2d
656, 659 (Tex. 1995).  We should not
insert words into the statute except to give effect to clear legislative
intent.  Id.  We presume that the legislature enacted the
statute with complete knowledge of existing law and with reference to it.  Acker v. Texas Water Comm’n,
790 S.W.2d 299, 301 (Tex. 1990). 
Regardless of whether the statute is ambiguous on its face, we may
consider the statute’s legislative history. 
Tex. Gov’t Code Ann. § 311.023(3)
(Vernon 2005).  We also may consider the
object sought to be obtained by the statute, the common law or former statutory
provisions, including laws








 on the same or similar
subjects, and the consequences of a particular construction.  Id. § 311.023(4), (5).

            B.  Application of the Principles.  Applying the above principles of statutory
construction,  we first examine section
74.052 and the medical authorization it requires to determine whether the
statute addresses ex parte communications. 


                        1.  Language of the statute.  When asserting a health care liability claim,
the claimant must give written notice, at least sixty days prior to filing
suit, to each physician or health care provider against whom a claim is being
made.  Tex.
Civ. Prac. & Rem. Code Ann. § 74.051(a) (Vernon 2005).  Along with the notice, the claimant must
provide each physician or health care provider an executed authorization for
the release of the claimant’s health information.  Id. 
The form for the authorization is prescribed by section 74.052.  This authorization explicitly allows and
consents to the release of “verbal” information from the patient’s other
treating physicians that are identified in the authorization.  Id. § 74.052(c).  However, the statute is silent as to the
manner in which verbal information can be obtained.  Therefore, the statute neither explicitly
authorizes nor explicitly prohibits ex parte communications.  See id. § 74.052.  

                        2.  Legislative intent.  We have reviewed the legislative history of the
statute and found no mention of ex parte communications.  Accordingly, we next examine the object
sought to be obtained by the statute.

                        3.  Object of the statute.  Chapter 74 of the Texas Civil Practice and
Remedies Code was enacted “to improve and modify the system by which health
care liability claims are determined.” 
Act of June 2, 2003, 78th Leg. R.S., ch. 204, § 10.11, 2003 Tex. Gen.
Laws 847, 884 (current version at Tex.
Civ. Prac. & Rem. Code §§ 74.001-.507 (Vernon 2005)).  To further this objective, the legislature in
2003, for the first time, required that a release of both written and “verbal”
health information accompany the notice of claim.  See Tex.
Civ. Prac. & Rem. Code Ann. §§ 74.051(a), 74.052(c).  The legislature did not state its purpose for
this requirement.  However, we recognize
that after suit is filed, ex parte communications, in some instances, may be
more practical, less time consuming, and less costly than formal discovery.  Therefore, based upon our reading of section
74.052 in light of the stated objective of Chapter 74, we are persuaded that
requiring the release of “verbal” as well as written health information was a
legislative effort to allow full, efficient, and cost effective discovery
relating to the noticed claim after suit is filed.  This release is not without limitation,
however.  In recognition of the privacy
interests at stake, the legislature provided a method for protecting all health
care information, including “the verbal,” that is not relevant.  See Tex.
Civ. Prac. & Rem. Code Ann. § 74.052(c) (statutory
authorization permits exclusion of health care information not relevant to
damages being claimed or to patient’s physical, mental, or emotional
condition).  This protection lessens the
potential for protected privacy information to be disclosed because only those
health care providers with relevant, nonprivileged information may be
interviewed.  Moreover, if a patient
visited a health care provider on multiple occasions with some visits involving
relevant, nonprivileged matters and some visits involving only irrelevant,
privileged matters, the medical authorization form allows the patient to
protect those visits involving only irrelevant, privileged matters from
discussion.[3]  See id.  

            4.  Existing common law.  Prior to the passage of section 74.052, two
courts of appeals, had determined that ex parte communications with nonparty
treating physicians were not improper under the current rules.  In the first case, the appellants complained
that the appellant wife’s treating physician had met privately with defense
counsel and the trial court disallowed cross examination of the physician about
the propriety of the meeting.  The
Houston First District Court of Appeals held that the trial court reasonably
concluded the appellant’s treating physician did not act improperly when he met
privately with opposing counsel, in part because no privileged information was
disclosed during the meeting.  Hogue
v. Kroger Store No. 107, 875 S.W.2d 477, 480 (Tex. App.–Houston [1st
Dist.] 1994, writ denied).  Accordingly,
the court held that the trial court did not abuse its discretion in disallowing
cross examination of the physician about the propriety of the meeting.  Id.  

            In another
case, the appellants complained that opposing counsel’s ex parte contact with
one of the appellant husband’s treating physicians was improper and should be
declared impermissible.  Rios,
58 S.W.3d at 169-71.  The
appellants further argued that ex parte communications “have been or should be
prohibited by Texas and federal courts.” 
Id. at 169.  The San
Antonio court disagreed and declined to formulate any such rule, stating that “[i]t
is not the role of this intermediate court to craft a new rule where none
currently exists.”  Id. at
171.  Five months later, the San Antonio
court again declined to hold ex parte communications improper under the current
rules.  See Durst v. Hill Country
Mem’l Hosp., 70 S.W.3d 233, 237-38 (Tex. App.–San Antonio 2001, no
pet.) (“This court has recently held [in Rios] that there is no
specific rule prohibiting ex parte communications between a plaintiff’s
treating physician and defense counsel.”). 


            The Fort
Worth court, when confronted with the issue, declined to address the propriety
of ex parte communications that occurred between the appellant’s treating
physician and defense counsel.  In James
v. Kloos, 75 S.W.3d 153 (Tex. App.–Fort Worth 2002, no pet.), the
appellant argued that his treating physician should not have been allowed to
testify against him at trial because his treating physician met ex parte with
defense counsel.  The appellant also
contended that the trial court compounded the error by refusing to allow the
appellant to ask the physician questions about the meeting.  Id. at 157-58.  The Fort Worth court recognized that both Durst
and Rios held that “unauthorized ex parte meetings are
not necessarily improper.”  Id.
at 158.  The court then assumed, without
deciding, that the trial court’s evidentiary rulings were improper, but held
that the appellant had failed to show he was harmed by the rulings.  Id. at 159.[4]

            Under the
rules of statutory construction, we must presume that the legislature was aware
of this case law.  Acker v. Texas
Water Comm’n, 790 S.W.2d 299, 301 (Tex. 1990).  We also recognize that had the legislature
intended to adopt a different rule, it could have done so.  

            5.  Consequences of a particular construction.  Finally, the consequences of a construction
that permits ex parte communications do not mandate a contrary
construction.  It has been said that
unacceptable problems, such as the lack of safeguards against the revelation of
privileged information, the chilling effect potential breaches of
confidentiality may have on a patient’s communication with a physician, and the
possibility of questionable conduct by defense counsel during the interview,
are inherent when ex parte communications are permitted.  It is doubtful, however, that a patient would
withhold relevant information from a physician, and jeopardize her health,
merely because such information may be uncovered by a defendant through ex
parte communications in a subsequent lawsuit  
Rios, 58 S.W.3d at 171 n.1.  Further, a defendant that engages in
questionable conduct during an ex parte interview is subject to sanctions.  See id.  Moreover, the concern about defense counsel’s
possible conduct is based upon the flawed premise that “questionable conduct
during an ex parte interview could only occur with defense counsel.”  Id.  We also note that prohibiting ex parte
communications “enables the party so wielding the privilege to monitor his
adversary’s progress in preparing his case by his presence on each occasion
such information is revealed while his own preparation is under no such
scrutiny.”  Doe v. Eli Lilly &
Co., 99 F.R.D. 126, 128-29 (D.D.C. 1983). 

            Based upon
the foregoing analysis, we conclude that section 74.052 does not change
existing law and therefore does not prohibit a defendant from communicating ex
parte with a claimant’s treating physicians and health care providers.  However, that is not the end of the
inquiry.  We must also determine whether
ex parte communications are permissible only under certain circumstances or in
all cases involving the prosecution of a health care liability claim.  

 

VI.  Restrictions on Ex Parte Communications

            Collins
argues that placing additional restrictions on the statutory authorization is a
denial of proper discovery and an improper application of the law.  If the statute expressly required that ex
parte communications be allowed in all circumstances, we would agree.  But as stated previously, neither the statute
nor the legislative history addresses ex parte communications.  Although we have concluded that section
74.052 does not prohibit ex parte communications generally, we would be
inserting words into the statute without a clear legislative intent to do so if
we further held that section 74.052 authorizes ex parte communications under
all circumstances when a patient is prosecuting a health care claim.  That exceeds our role and is something we
will not do.  See Laidlaw
Waste Sys., Inc., 904 S.W.2d at 659; see also Rios, 58
S.W.3d at 171. 

            In Mutter,
the physician-patient privilege was waived completely as to the defendant
physicians and partially as to the nonparty treating physicians.  Records or communications in the possession
of the treating physicians but not relevant to the underlying suit remained
privileged.  Mutter, 744
S.W.2d at 601.  The trial court ordered
the plaintiffs to sign an authorization completely waiving the
physician-patient privilege.  In
response, the plaintiffs moved for a protective order and included safeguards
in an authorization they consented to sign. 
The supreme court observed that the plaintiffs followed the correct
procedure to protect the privileged information.  Id.  Three years later, in addressing the
propriety of ex parte communications, the San Antonio court stated that one
reason for permitting ex parte communications was that the plaintiff had the
burden to invoke the trial court’s protection for privileged material.  See Durst, 70 S.W.3d at 238 (“[A]
plaintiff may invoke the court’s protection for privileged material, and it
appears it is his burden to do so.”). 
Again, we must presume that the legislature was aware of this case law
when it enacted section 74.052.  Acker
v. Texas Water Comm’n, 790 S.W.2d 299, 301 (Tex. 1990).  Had the legislature intended to adopt a
different rule, it could have done so. 
Because section 74.052 does not prohibit the issuance of a protective
order to protect privileged information that is irrelevant to a health care
liability claim, we conclude that the legislature did not intend to overrule or
modify Mutter or Durst.  Thus, we hold that section 74.052 did not
change existing law in this area.

            Collins
points out that the challenged ex parte communications were held to be proper
in Durst, Rios, and Hogue.  However, the plaintiffs in those cases raised
the issue of the ex parte communications for the first time at trial.  None of the plaintiffs moved for a protective
order or otherwise sought to restrict the defendants from engaging in ex parte
communications with the plaintiffs’ other treating physicians before the
communications occurred.  Durst,
70 S.W.3d at 236;  Rios, 58
S.W.3d at 169; Hogue, 875 S.W.2d at 481.  Further, none of the cases held that ex parte
communications must be permitted in all circumstances.  Durst, 70 S.W.3d at 236;  Rios, 58 S.W.3d at 169; Hogue,
875 S.W.2d at 481.  Our holding is
consistent with those cases.

 

VII.  Abuse of Discretion    

            In the
instant case, the trial court’s order prohibits postsuit ex parte
communications between Collins and Ms. Regian’s nonparty treating
physicians.  Thus, the order does not
prevent Collins from obtaining Ms. Regian’s health information, but only
excludes ex parte communications as a means for obtaining the information.  The Regians listed seven physicians who had
no relevant information and, thus, possessed only information still protected
by the physician-patient privilege. However, they also asserted that the
twenty-five physicians or health care providers who possessed relevant
information also had some information that was not relevant to the suit and
therefore still protected as well.  The
materials filed in this proceeding do not show that Collins challenged this
assertion.  Consequently, the trial court
reasonably could have determined that the prohibition of ex parte
communications was necessary to protect Ms. Regian’s privileged information.[5]
 Therefore, after reviewing the record in
this case, we cannot say that the trial court abused its discretion. 

            Because we
have construed section 74.052 as not changing existing law regarding ex parte
communications, and because we have concluded that the trial court reasonably
could have found that a protective order was necessary in this case to protect
privileged information, we hold that the trial court in this case did not abuse
its discretion in prohibiting postsuit ex parte communications.  While such a restriction has a significant
impact in the presentation of a defense, we cannot conclude that so restricting
Collins under the facts of this case constitutes an abuse of discretion, given
the current state of the law.

 

VIII.  Disposition

            Having
concluded that Collins has not shown that the trial court abused its discretion
in granting the Regians’s motion for protective order, we need not determine
whether Collins has an adequate remedy by appeal.  We deny the petition for writ
of mandamus.

 

                                                                                                    BRIAN HOYLE   

                                                                                                               Justice

Opinion delivered May 14,
2007.

Panel consisted of Worthen,
C.J., Griffith, J., and Hoyle, J.

 

 

(PUBLISH)











    
[1] The respondent is the Honorable Kerry L.
Russell, Judge of the 7th Judicial District Court, Smith County, Texas.”  The
term “claimant” as used in this opinion is one who has filed suit to recover
damages in a health care liability claim.





    
[2] The Texas Occupations Code and the Texas Civil
Practice and Remedies Code include similar privileges.  See Tex.
Occ. Code Ann. § 159.002(b) (Vernon 2004) (records of the identity,
diagnosis, evaluation, or treatment of a patient are confidential and
privileged and may not be disclosed); Tex.
Health & Safety Code Ann. § 241.152 (Vernon 2001) (prohibits
unauthorized disclosure of a patient’s health care information).  Both codes
also contain exceptions to the privilege. 
See Tex. Occ. Code Ann. §§
159.003 (Vernon Supp. 2006), 159.004 (Vernon 2004); Tex. Health & Safety Code Ann. § 241.153.  However, the arguments of the parties relate
only to Texas Rule of Evidence 509, and we therefore do not address these
statutory provisions.





    
[3] To exclude
irrelevant health information, the claimant must list the name of each
physician or health care provider to whom the authorization does not extend and
the inclusive dates of examination, evaluation, or treatment to be withheld
from disclosure.  Tex. Civ. Prac. & Rem Code Ann. § 74.052(c).  However, exclusion of information by date
does not protect irrelevant, privileged information that is acquired in the
same date as relevant information.





     [4] Two federal
district courts sitting in Texas have addressed the propriety of ex parte
communications.  In Horner v. Rowan
Cos., 153 F.R.D. 597 (S.D. Tex. 1994), the court held that ex parte
communications between defense counsel and plaintiff’s treating physicians were
prohibited unless plaintiff “specifically and unconditionally” consents after
receiving advance notice.  Id.
at 601.   In so holding, the court
established a new rule of procedure to cover the question of ex parte
communications in federal courts and was not interpreting Texas law.  In a later case, applying Texas law, the
court held that ex parte communications with a plaintiff’s nonparty treating
physicians were prohibited unless the plaintiff authorized the
communications.   Perkins v. United
States, 877 F. Supp. 330, 333 (E.D. Tex. 1995).   The court expressly declined to follow Hogue
without approval of Hogue by the Texas Supreme
Court.  Id. at 333.  However, the Texas Supreme Court denied the
application for writ of error in Hogue.





     [5] It is possible that a number of these health care
providers’ only contact with the Regians would be through the review of
relevant, nonprivileged medical records, and thus all of the information known
by those health care providers would be relevant and nonprivileged.  However, we cannot make that determination
from the record before us.