# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00086-CV

**Joel Black and Jessica Black, Appellants**

**v.**

**Tamera LeBlanc, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
### NO. GN001108, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING

On the morning of April 14, 1999, a vehicle driven by Tamera LeBlanc rear-ended Joel and Jessica Black=s vehicle in Austin as the Blacks waited at a traffic light in the access lane of I-H 35 at the William Cannon intersection. Ms. LeBlanc acknowledged that she was at fault in causing the accident; she stated that in the weeks before the accident she had noticed that her brakes were not working normally and that she planned to take the car in for service as soon as she got her paycheck on the first of the month. She also admitted that immediately prior to the collision she had briefly looked away from the road. The accident caused minimal damage to the vehicles, and after exchanging information and filling out a police report, Ms. LeBlanc and the Blacks drove away from the scene. Later that day, Jessica and Joel,[1] who had refused emergency medical services at the scene, began complaining of aches and pains. They went to a

---

[1] For the purpose of clarity, we will refer to appellants by their first names.

hospital emergency room, where they received pain medication and were discharged.

They later received chiropractic services and physical therapy for a couple of months but then discontinued treatment. The Blacks sued Ms. LeBlanc for negligence, seeking damages for pain and suffering in the past and future, for physical impairment, and for medical expenses; Jessica also sought damages for loss of earning capacity, claiming that she had been unable to work for about two months. She claimed about $12,000 in medical expenses and about $8000 of lost earnings and benefits; Joel claimed between $1500 and $2000 of lost earnings and between $3000 and $3500 for medical expenses.

The jury found that Ms. LeBlanc was negligent and that her negligence proximately caused the accident, but found that the Blacks were only entitled to the medical expenses they incurred for their visit to the emergency room the day of the accidentC$834.09 for Jessica and $145.00 for Joel. The jury awarded no damages for the expenses associated with their subsequent doctor visits, physical therapy, or chiropractic services; the jury failed to award damages for pain or impairment and awarded Jessica only $56.00 for lost earnings. On appeal, the Blacks assert that the evidence is factually insufficient to support the jury=s failure to award damages for pain and suffering; they do not complain of the jury=s failure to award additional medical expenses or lost earnings. Because we find that the jury=s failure to find in the Blacks= favor is supported by the record, we affirm the judgment.

**DISCUSSION**

Ms. LeBlanc testified that she had been traveling about thirty-five to forty miles per hour on the access road approaching the intersection when she saw the Blacks= car in front of her and slammed on the brakes. She estimated that her speed at the time of impact was twelve to fifteen miles per hour. She also stated that she attempted to avoid hitting the Blacks= car by steering her car to the left, toward the

guardrail. The front right-hand side of her car hit the left rear bumper of the Blacks=car. Joel testified that the impact was not Amajor@ and that it did not cause his vehicle to hit any other cars or the guardrail. He also testified that he refused medical services at the scene because he was not in pain immediately after the accident.

At the emergency room that afternoon, Jessica complained of a stiff neck and tingling in the left side of her neck and arm; later, she also began having severe headaches. Her x-rays were normal and she was released with a prescription for pain medication, muscle relaxers, and a referral to her general physician. Joel, who testified that he had begun experiencing abdominal pain and pain in the middle part of his back, underwent a prostate exam and was given a prescription for pain medication at the hospital. Later, he also began experiencing pain in his neck. Joel received physical therapy and chiropractic services for approximately two months. Jessica had about three months of physical therapy and some chiropractic treatment.

The Blacks had received chiropractic treatment for similar problems in the past. When Joel was cross-examined about chiropractic treatment he received as a result of an accident in 1982, he stated that he did not recall the accident. He was shown records of his visits to chiropractors throughout the 1980s for low and mid-back pain. Joel was also shown records of his visits to a chiropractor after a car accident in 1993, at which time he was complaining of neck strain and sprain, difficulty sleeping, pain between the shoulders, and a painful tailbone. Even after being shown the records, Joel testified that he still did not recall that he had experienced neck pain as a result of the 1993 accident. Joel admitted that in his pretrial deposition he had denied ever experiencing problems with his back, shoulders, or neck, and that he

3

had stated that he never had headaches prior to the 1999 accident. He also testified that he had specifically complained of back pain while at the emergency room following the accident; the hospital records, in contrast, indicated that his only complaint was Agroin pain.@

Similarly, Jessica was questioned on cross-examination about her prior medical history. She admitted having had headaches, aches and pains associated with her neck, and back pain prior to the 1999 accident. She was also shown records of her visits to a chiropractic clinic beginning in 1987, at which time she was complaining of headaches, lower back pain, neck pain and stiffness. Even when confronted with the information contained in the records, however, Jessica maintained on the stand that she had no recollection of why she had sought chiropractic services at that time. Jessica was also asked during cross-examination about car accidents in 1987 and 1990. She stated that she had been involved in an accident with an eighteen-wheeler truck in 1987 or 1988, but did not think she had been injured in that accident. She also acknowledged that she had been involved in a collision in 1990, but did not recall being placed on disability leave from work, despite being shown a certificate of disability by defense counsel.

The defense also introduced records from the chiropractic clinic for treatment in 1990, at which time Jessica was complaining of numbness in her left arm, lower back pain, and neck pain. Similarly, her chiropractor=s records from 1993 indicated that she was complaining of neck strains and sprains. When reminded of her deposition testimony in which she denied having any neck or back problems prior to the 1999 accident, Jessica admitted only that she had been Amistaken.@ She also agreed that she had testified during her deposition that she had no history of headaches before the accident, even though a medical record from 1998 included a Aheadache questionnaire@ in which she indicated severe and frequent

4

headaches. Finally, both sides introduced a video deposition of Dr. Harold Skaggs, a neurologist to whom Jessica was referred for evaluation after the 1999 accident. Dr. Skaggs testified that a CAT scan indicated no neurological impairment; in his evaluation, Jessica=s motor skills were normal and her symptoms were most likely the product of anxiety rather than actual physical ailments.

*Standard of Review*

**When reviewing a factual sufficiency challenge, we must assess all the evidence and may not substitute our judgment for that of the trier of fact.** *Westech Eng=g, Inc. v. Clearwater Constructors, Inc.*, **835 S.W.2d 190, 196 (Tex. App.C Austin 1992, no writ). When the challenge is to a finding on which the prevailing party had the burden of proof, we may reverse the judgment only if the challenged finding shocks the conscience or clearly shows bias, or if the favorable evidence is so weak as to make the judgment clearly wrong and manifestly unjust.** *Pool v. Ford Motor Co.*, **715 S.W.2d 629, 635 (Tex. 1986);** *Cain v. Bain*, **709 S.W.2d 175, 176 (Tex. 1986). If the challenge is to an adverse finding, or failure to find, on which the appellant had the burden of proof, we may reverse only if the failure to find is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust.** *Ames v. Ames*, **776 S.W.2d 154, 158 (Tex. 1989);** *Cropper v. Caterpillar Tractor Co.*, **754 S.W.2d 646, 651 (Tex. 1988).**

The Blacks assert that the record contains evidence that they suffered pain, including their testimony regarding their symptoms following the accident, records from their hospital and physician visits, and records from their physical therapist and chiropractor. However, in light of the entire record, the jury=s

5

failure to find that the Blacks suffered pain as a result of the 1999 accident is not **so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust.** Although the evidence presented by the Blacks may have shown that Jessica and Joel suffered pain, it does not establish the causal link between that pain and the accident with Ms. LeBlanc. The jury was free to consider Jessica=s and Joel=s prior medical histories and the fact that each had previously complained of the same kind of pain they alleged was caused by the 1999 accident. The jury was also free to conclude that a minor impact, low-speed collision such as the one that occurred in the instant case was unlikely to cause the plaintiffs= pain or injuries in the absence of preexisting problems. *See Hogue v. Kroger Store No. 107*, 875 S.W.2d 477, 481-82 (Tex. App.CHouston [1st Dist.] 1994, writ denied) (concluding reasonable jury might believe that much of plaintiff=s damages were not result of slip and fall in grocery store but rather preexisting conditions). Moreover, the jury witnessed both Jessica and Joel as they were confronted with medical records that belied their denial of previous injuries or problems that may have contributed to pain they experienced following the accident with Ms. LeBlanc. The jury had the discretion to disbelieve the plaintiffs= testimony about the cause of their pain and suffering. In addition, on the strength of Dr. Skaggs=s testimony that some of Jessica=s problems were the result of anxiety rather than objective symptoms, the jury was free to believe that Jessica=s symptoms were not caused by the 1999 accident.

In a case involving similar facts, the Sixth Court of Appeals affirmed the jury=s failure to award all of the plaintiff=s medical expenses:

> When there are objective symptoms or signs of injury that unquestionably were caused by a collision, a jury verdict of no damages or a verdict that awards less than the undisputed medical expenses caused by the accident is against the great weight and preponderance of the evidence. But where the evidence is conflicting as to the severity of the collision and as

6

to whether the plaintiff=s injuries were caused by the accident or by some other fact, the jury may resolve the conflicts, accept one version of the evidence over another, and refuse to award damages.

*Wagner v. Taylor*, 867 S.W.2d 404, 405 (Tex. App.CTexarkana 1993, no writ) (citations omitted).

Here, the Blacks complained chiefly of neck and back pain and headaches that no longer required treatment or caused the Blacks pain at the time of trial. They had no objective signs of pain but relied primarily on their own testimony, which the jury was free to disbelieve. The Blacks relied on the deposition testimony of their physical therapist, Laura Adams, as objective evidence that they suffered compensable pain. As defense counsel emphasized at trial, however, Ms. Adams did not have medical training, was not a medical care provider, and was not licensed to diagnose symptoms or prescribe medication. Accordingly, Ms. Adams= testimony did not address the single-most important and disputed issue in the lawsuitCthe causal link between the 1999 accident and the plaintiffs= injuries.

Furthermore, Ms. Adams relied on information supplied to her by Jessica and Joel. In response to questions by defense counsel, Ms. Adams testified that it is her practice to take a medical history for each client, including past injuries or conditions, so that she can better treat the client. Significantly, both Jessica and Joel had neglected to inform her of their prior injuries and accidents. This evidence, which suggested the Blacks withheld relevant information from their own physical therapist and one of their trial witnesses, augmented the inconsistent testimony of Joel and Jessica regarding prior injuries and pain. The jury was free to resolve the conflicts in the evidence and the credibility issues against the plaintiffs. Based on this record, the jury=s failure to award damages for pain and suffering is not so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly

7

unjust.  Accordingly, we overrule appellants= issue.

## CONCLUSION

Having overruled appellants= sole issue, we affirm the district-court judgment.


Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed:   September 12, 2002

Do Not Publish