TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-02-00086-CV







Joel Black and Jessica Black, Appellants


v.


Tamera LeBlanc, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT

NO. GN001108, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING




 On the morning of April 14, 1999, a vehicle driven by Tamera LeBlanc rear-ended
Joel and Jessica Black's vehicle in Austin as the Blacks waited at a traffic light in the access lane of
I-H 35 at the William Cannon intersection. Ms. LeBlanc acknowledged that she was at fault in
causing the accident; she stated that in the weeks before the accident she had noticed that her brakes
were not working normally and that she planned to take the car in for service as soon as she got her
paycheck on the first of the month. She also admitted that immediately prior to the collision she had
briefly looked away from the road. The accident caused minimal damage to the vehicles, and after
exchanging information and filling out a police report, Ms. LeBlanc and the Blacks drove away from
the scene. Later that day, Jessica and Joel, (1) who had refused emergency medical services at the
scene, began complaining of aches and pains. They went to a hospital emergency room, where they
received pain medication and were discharged. 

 They later received chiropractic services and physical therapy for a couple of months
but then discontinued treatment. The Blacks sued Ms. LeBlanc for negligence, seeking damages for
pain and suffering in the past and future, for physical impairment, and for medical expenses; Jessica
also sought damages for loss of earning capacity, claiming that she had been unable to work for
about two months. She claimed about $12,000 in medical expenses and about $8000 of lost earnings
and benefits; Joel claimed between $1500 and $2000 of lost earnings and between $3000 and $3500
for medical expenses.

 The jury found that Ms. LeBlanc was negligent and that her negligence proximately
caused the accident, but found that the Blacks were only entitled to the medical expenses they
incurred for their visit to the emergency room the day of the accident--$834.09 for Jessica and
$145.00 for Joel. The jury awarded no damages for the expenses associated with their subsequent
doctor visits, physical therapy, or chiropractic services; the jury failed to award damages for pain or
impairment and awarded Jessica only $56.00 for lost earnings. On appeal, the Blacks assert that the
evidence is factually insufficient to support the jury's failure to award damages for pain and
suffering; they do not complain of the jury's failure to award additional medical expenses or lost
earnings. Because we find that the jury's failure to find in the Blacks' favor is supported by the
record, we affirm the judgment.


DISCUSSION

 Ms. LeBlanc testified that she had been traveling about thirty-five to forty miles per
hour on the access road approaching the intersection when she saw the Blacks' car in front of her and
slammed on the brakes. She estimated that her speed at the time of impact was twelve to fifteen
miles per hour. She also stated that she attempted to avoid hitting the Blacks' car by steering her car
to the left, toward the guardrail. The front right-hand side of her car hit the left rear bumper of the
Blacks' car. Joel testified that the impact was not "major" and that it did not cause his vehicle to hit
any other cars or the guardrail. He also testified that he refused medical services at the scene because
he was not in pain immediately after the accident.

 At the emergency room that afternoon, Jessica complained of a stiff neck and tingling
in the left side of her neck and arm; later, she also began having severe headaches. Her x-rays were
normal and she was released with a prescription for pain medication, muscle relaxers, and a referral
to her general physician. Joel, who testified that he had begun experiencing abdominal pain and pain
in the middle part of his back, underwent a prostate exam and was given a prescription for pain
medication at the hospital. Later, he also began experiencing pain in his neck. Joel received
physical therapy and chiropractic services for approximately two months. Jessica had about three
months of physical therapy and some chiropractic treatment.

 The Blacks had received chiropractic treatment for similar problems in the past. 
When Joel was cross-examined about chiropractic treatment he received as a result of an accident
in 1982, he stated that he did not recall the accident. He was shown records of his visits to
chiropractors throughout the 1980s for low and mid-back pain. Joel was also shown records of his
visits to a chiropractor after a car accident in 1993, at which time he was complaining of neck strain
and sprain, difficulty sleeping, pain between the shoulders, and a painful tailbone. Even after being
shown the records, Joel testified that he still did not recall that he had experienced neck pain as a
result of the 1993 accident. Joel admitted that in his pretrial deposition he had denied ever 
experiencing problems with his back, shoulders, or neck, and that he had stated that he never had
headaches prior to the 1999 accident. He also testified that he had specifically complained of back
pain while at the emergency room following the accident; the hospital records, in contrast, indicated
that his only complaint was "groin pain."

 Similarly, Jessica was questioned on cross-examination about her prior medical
history. She admitted having had headaches, aches and pains associated with her neck, and back
pain prior to the 1999 accident. She was also shown records of her visits to a chiropractic clinic
beginning in 1987, at which time she was complaining of headaches, lower back pain, neck pain and
stiffness. Even when confronted with the information contained in the records, however, Jessica
maintained on the stand that she had no recollection of why she had sought chiropractic services at
that time. Jessica was also asked during cross-examination about car accidents in 1987 and 1990. 
She stated that she had been involved in an accident with an eighteen-wheeler truck in 1987 or 1988,
but did not think she had been injured in that accident. She also acknowledged that she had been
involved in a collision in 1990, but did not recall being placed on disability leave from work, despite
being shown a certificate of disability by defense counsel. 

 The defense also introduced records from the chiropractic clinic for treatment in 1990,
at which time Jessica was complaining of numbness in her left arm, lower back pain, and neck pain. 
Similarly, her chiropractor's records from 1993 indicated that she was complaining of neck strains
and sprains. When reminded of her deposition testimony in which she denied having any neck or
back problems prior to the 1999 accident, Jessica admitted only that she had been "mistaken." She
also agreed that she had testified during her deposition that she had no history of headaches before
the accident, even though a medical record from 1998 included a "headache questionnaire" in which
she indicated severe and frequent headaches. Finally, both sides introduced a video deposition of
Dr. Harold Skaggs, a neurologist to whom Jessica was referred for evaluation after the 1999
accident. Dr. Skaggs testified that a CAT scan indicated no neurological impairment; in his
evaluation, Jessica's motor skills were normal and her symptoms were most likely the product of
anxiety rather than actual physical ailments.


Standard of Review

 When reviewing a factual sufficiency challenge, we must assess all the evidence and
may not substitute our judgment for that of the trier of fact. Westech Eng'g, Inc. v. Clearwater
Constructors, Inc., 835 S.W.2d 190, 196 (Tex. App.--Austin 1992, no writ). When the challenge
is to a finding on which the prevailing party had the burden of proof, we may reverse the judgment
only if the challenged finding shocks the conscience or clearly shows bias, or if the favorable
evidence is so weak as to make the judgment clearly wrong and manifestly unjust. Pool v. Ford
Motor Co., 715 S.W.2d 629, 635 (Tex. 1986); Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). If
the challenge is to an adverse finding, or failure to find, on which the appellant had the burden of
proof, we may reverse only if the failure to find is so contrary to the overwhelming weight and
preponderance of the evidence as to be clearly wrong and manifestly unjust. Ames v. Ames, 776
S.W.2d 154, 158 (Tex. 1989); Cropper v. Caterpillar Tractor Co., 754 S.W.2d 646, 651 (Tex.
1988). 

 The Blacks assert that the record contains evidence that they suffered pain, including
their testimony regarding their symptoms following the accident, records from their hospital and
physician visits, and records from their physical therapist and chiropractor. However, in light of the
entire record, the jury's failure to find that the Blacks suffered pain as a result of the 1999 accident
is not so contrary to the overwhelming weight and preponderance of the evidence as to be clearly
wrong and manifestly unjust. Although the evidence presented by the Blacks may have shown that
Jessica and Joel suffered pain, it does not establish the causal link between that pain and the accident
with Ms. LeBlanc. The jury was free to consider Jessica's and Joel's prior medical histories and the
fact that each had previously complained of the same kind of pain they alleged was caused by the
1999 accident. The jury was also free to conclude that a minor impact, low-speed collision such as
the one that occurred in the instant case was unlikely to cause the plaintiffs' pain or injuries in the
absence of preexisting problems. See Hogue v. Kroger Store No. 107, 875 S.W.2d 477, 481-82 (Tex.
App.--Houston [1st Dist.] 1994, writ denied) (concluding reasonable jury might believe that much
of plaintiff's damages were not result of slip and fall in grocery store but rather preexisting
conditions). Moreover, the jury witnessed both Jessica and Joel as they were confronted with
medical records that belied their denial of previous injuries or problems that may have contributed
to pain they experienced following the accident with Ms. LeBlanc. The jury had the discretion to
disbelieve the plaintiffs' testimony about the cause of their pain and suffering. In addition, on the
strength of Dr. Skaggs's testimony that some of Jessica's problems were the result of anxiety rather
than objective symptoms, the jury was free to believe that Jessica's symptoms were not caused by
the 1999 accident.

 In a case involving similar facts, the Sixth Court of Appeals affirmed the jury's failure
to award all of the plaintiff's medical expenses:When there are objective symptoms or signs of injury that unquestionably were
caused by a collision, a jury verdict of no damages or a verdict that awards less than
the undisputed medical expenses caused by the accident is against the great weight
and preponderance of the evidence. But where the evidence is conflicting as to the
severity of the collision and as to whether the plaintiff's injuries were caused by the
accident or by some other fact, the jury may resolve the conflicts, accept one version
of the evidence over another, and refuse to award damages.



Wagner v. Taylor, 867 S.W.2d 404, 405 (Tex. App.--Texarkana 1993, no writ) (citations omitted).

Here, the Blacks complained chiefly of neck and back pain and headaches that no longer required
treatment or caused the Blacks pain at the time of trial. They had no objective signs of pain but
relied primarily on their own testimony, which the jury was free to disbelieve. The Blacks relied on
the deposition testimony of their physical therapist, Laura Adams, as objective evidence that they
suffered compensable pain. As defense counsel emphasized at trial, however, Ms. Adams did not
have medical training, was not a medical care provider, and was not licensed to diagnose symptoms
or prescribe medication. Accordingly, Ms. Adams' testimony did not address the single-most
important and disputed issue in the lawsuit--the causal link between the 1999 accident and the
plaintiffs' injuries. 

 Furthermore, Ms. Adams relied on information supplied to her by Jessica and Joel. 
In response to questions by defense counsel, Ms. Adams testified that it is her practice to take a
medical history for each client, including past injuries or conditions, so that she can better treat the
client. Significantly, both Jessica and Joel had neglected to inform her of their prior injuries and
accidents. This evidence, which suggested the Blacks withheld relevant information from their own 
physical therapist and one of their trial witnesses, augmented the inconsistent testimony of Joel and
Jessica regarding prior injuries and pain. The jury was free to resolve the conflicts in the evidence
and the credibility issues against the plaintiffs. Based on this record, the jury's failure to award
damages for pain and suffering is not so contrary to the overwhelming weight and preponderance
of the evidence as to be clearly wrong and manifestly unjust. Accordingly, we overrule appellants'
issue.


CONCLUSION

 Having overruled appellants' sole issue, we affirm the district-court judgment.



 

 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed: September 12, 2002

Do Not Publish

1.   For the purpose of clarity, we will refer to appellants by their first names.